ESTATES OF BEISBIER (Kilian and Elizabeth) : MURPHY, Administratrix of the Estate of Kilian Beisbier, Appellant, v. PESCH, Executor of the Estate of Elizabeth Beisbier, Respondent.*

*No. 251. Argued June 1, 1970.—Decided June 26, 1970.*
(Also reported in 177 N. W. 2d 919.)

* Motion for rehearing denied, with costs, on September 1, 1970.

410

For the appellant there were briefs and oral argument by *Bernard C. Westfahl* of Milwaukee.

For the respondent there was a brief by *Albert J. Hauer*, attorney, and *St. Peter & Hauer* of counsel, all of Fond du Lac, and oral argument by *Albert J. Hauer*.

BEILFUSS, J. The issue, as we view this case, is whether a joint checking account carries all the attributes of a common-law joint tenancy, including the right to trace severed funds into assets purchased by one of the co-owners of the account.

Appellant urges in her brief that the county court's determination of the ownership of these assets constituted a question of fact and not one of law. We disagree and consider the dispositive issue as a question of law.

The trial judge assumed it was undisputed that the funds for the purchase of the assets here in question came from the joint checking account. He stated:

"It might be added at this point that it is undisputed that the funds used for the purchase of the institutional bonds and the Pontiac car come from an account in the First State Bank of Campbellsport, Wisconsin in the joint names of M. K. or Elizabeth Beisbier. This account had been held jointly since 1949, and funds added to and withdrawn by both of the parties during the years preceding their deaths. In connection with the use of funds from this joint account for the purchase of some of the assets in question, it is the argument of the Kilian Beisbier estate that property purchased with joint funds became joint property, and that upon the death of Elizabeth Beisbier, her husband and the surviving joint tenant became sole owner thereof.

". . . I am convinced that both Kilian Beisbier and Elizabeth Beisbier contributed to the funds held in this account. Elizabeth Beisbier had a separate estate from which she could have, and presumably did, contribute funds to this joint account. Kilian Beisbier was a busi-

nessman for many years, and seems clearly to have commingled his earnings with his wife's money. We then start with the proposition that this joint account was the source of funds from which purchases of at least some of the assets in question were made."

The appellant takes issue with the characterization of this tracing of funds as undisputed, but the validity of that factual finding is not necessary to our decision in this case.

Several years ago, in *Estate of Staver* (1935), 218 Wis. 114, 260 N. W. 655, this court adopted the theory that survivorship rights in bank accounts were based on contract rather than common-law joint tenancy principles. In further characterizing the species of joint interest created in such a situation, we said in *Estate of Roth* (1964), 25 Wis. 2d 528, 533, 131 N. W. 2d 286:

"The form of the bank account is not determinative, but must be considered with the surrounding facts and circumstances in order to ascertain the intent of the donor-depositor. The contract raises a rebuttable presumption that the usual rights incident to jointly owned property were intended to vest in the donee-depositor. This presumption can be overcome by clear and convincing evidence. [Cases cited.]"

In *Estate of Schley* (1955), 271 Wis. 74, 80, 81, 72 N. W. 2d 767, this court stated that when a wife purchased certificates of deposit payable to herself and her husband, either or the survivor, it constituted an assignment of personal property evincing an intent to create a joint tenancy pursuant to sec. 230.45 (2), Stats.[1] Moreover, the court said a withdrawal of those

---

[1] "Any deed, transfer or assignment of real or personal property from husband to wife or from wife to husband which conveys an interest in the grantor's lands or personal property and by its terms evinces an intent on the part of the grantor to create a joint tenancy between grantor and grantee shall be held and construed to create such joint tenancy, and any husband and wife who are grantor and grantee in any such deed, transfer or assign-

funds without the consent of the spouse severed the joint tenancy but did not destroy the joint interest therein and could be traced to assets held at the time of death.

In the present case, the trial court relied on our decision in *Estate of Gray* (1965), 27 Wis. 2d 204, 133 N. W. 2d 816, where a woman, prior to marriage, had a substantial account in an employee's credit union, solely in her name. After she was married the account was put in both her name and her husband's name payable to either, both or the survivor. Subsequently she withdrew all the funds without informing her husband and purported to dispose of them by will. The record in that case revealed the husband contributed nothing to the account, nor did he ever make any withdrawals. Yet, the court applied its rule of *Estate of Pfeifer* (1957), 1 Wis. 2d 609, 612, 85 N. W. 2d 370, where it was said:

"Although the form of the account is not conclusive, as we said in the cases, *supra,* an account opened in joint names raises a rebuttable presumption that the creator of such an account intended the usual rights incident to jointly owned property."

Following the *Pfeifer* holding we determined the presumption of a joint account had not been rebutted by clear and convincing evidence, and the husband had become a joint tenant of the credit union account. In accord with the holding of *Schley, supra,* it was said in *Gray,* at page 211:

"By withdrawing the entire account, Mildred Gray severed the joint tenancy, but, in our opinion, she did not thereby deprive her husband of his 50 percent interest. Since the funds in this case can be traced, Mr. Gray is entitled to one half of the account as it existed at the time of the severance. Thus, Mr. Gray is entitled to one half of $35,141.08, or $17,570.54, plus interest

---

ment heretofore given shall hold the property described in such deed, transfer or assignment as joint tenants."

earned on the latter figure while such fund remained with the credit union; from the date that such money was paid to the executor, Mr. Gray is entitled to interest at the legal rate."

In the recent case of *Estate of Kohn* (1969), 43 Wis. 2d 520, 168 N. W. 2d 812, a case involving a joint savings account, reference was made to a distinction between joint savings and joint checking accounts, at pp. 523, 524:

"Joint tenancies between husband and wife have long been a source of problems in our jurisprudence, especially joint tenancies involving bank accounts. A joint tenancy in real estate does not raise the severance problems that the relationship in personal property creates because one does not have the power to convey all the real estate as he does to withdraw all the funds of a joint bank account. It is to be noted the present case involves a savings account and not a checking account, which by its very purpose makes the application of the joint tenancy concept difficult and, if applicable at all, requires a different application of the rule of severance."

One problem presented by checking accounts is that of complete control in both individuals. The possibilities resulting from such a situation are analyzed by Professor Richard W. Effland in *Estate Planning: Co-Ownership,* 1958 Wis. L. Rev. 507, 518:

". . . there are obvious practical differences between a joint savings account and a joint checking account. If *A* opens a joint savings account payable to '*A* or *B,* or the survivor,' *A* actually retains full control during lifetime simply by retaining possession of the passbook which must be presented for withdrawals. Conversely, if *A* delivers the passbook to *B,* the latter now has full control. But if *A* opens a checking account payable to '*A* or *B,* or the survivor,' either party can withdraw the full balance in the account by drawing a check against it; control is in both."

The anomalies of this area of the law are further pointed up in a recent article by Professor N. William

Hines, *Personal Property Joint Tenancies: More Law, Fact and Fancy,* 54 Minn. L. Rev. (1970), 509, 531:

"The difficulty the courts have had with joint accounts can be traced primarily to the insistence on forcing an essentially novel ownership arrangement into the mold of an existing set of legal principles. The joint account is fundamentally neither a common law joint tenancy, an ordinary inter vivos gift, a trust nor a will, yet it partakes of the features of all of these." [2]

The uniqueness of the concept of joint bank accounts was delineated in *Estate of Michaels* (1965), 26 Wis. 2d 382, 398, 132 N. W. 2d 557, where Mr. Chief Justice CURRIE, speaking for the court, said:

"The joint bank account is a comparatively new device in the long development of the law. While the joint payees of such account are termed joint tenants for lack of a better terminology, the account has different attributes than a true joint tenancy. Such an account provides a useful technique for transferring property, and need not fit any of the historical and traditional property concepts associated with the law of *inter vivos* gifts and joint tenancy. It would be a mistake to ignore the deposit contract and the intent of the parties in order to apply such concepts."

The instant matter is the first joint bank account involving solely checking account funds to reach this court.[3] Therefore, we do not feel constrained to extend the "tracing" doctrine of the *Schley, Gray* and *Kohn Cases, supra,* all involving various forms of savings accounts, to joint checking accounts. We agree with Professor Effland, *supra,* when he says at page 520:

---

[2] For an excellent summary of this area *see also:* Kepner, *The Joint and Survivorship Bank Account—A Concept Without a Name,* 41 Cal. L. Rev. (1953), 596; and Kepner, *Five More Years of the Joint Bank Account Muddle,* 26 Univ. of Chicago L. Rev. (1959), 376.

[3] *Cf. Department of Taxation v. Berry* (1951), 258 Wis. 544, 46 N. W. 2d 757.

"It is submitted that frank judicial recognition of an account which confers no rights during lifetime (or, as to a checking account, rights which are revocable), but carries survivorship rights, is justified, serves the modern policy of carrying out intent, and is no more a violation of the Statute of Wills than presently exists. Certainly the opening of bank accounts is surrounded by sufficient formality to prevent any question of fraud." [4]

The very nature of a joint checking account is such that it is utilized more as a shared wallet than as a shared investment, as is the case with a savings account. Joint checking accounts are commonly used by married couples as simply a vehicle for carrying on their day-to-day financial affairs and there is no sound reason for ascribing to them the attributes of a common-law joint tenancy other than survivorship. The difficulty of tracing assets back to a purchase from a joint checking account for purposes of applying the severance rules of *Gray, supra,* as has been attempted in the instant case, demonstrates the futility of such a rule. Moreover, we are convinced the intent of the parties in opening a joint checking account would be frustrated by a process of severance and tracing of assets simply because they were purchased with a check drawn on the joint account.

A prime consideration behind the opening of a joint checking account is the convenience of handling living expenses as well as the convenience of providing an immediate transfer of a typically minimal pool of assets at death by way of survivorship. Respecting the matter of convenience, we agree with the following statement in 10 Am. Jur. 2d, *Banks,* p. 354, sec. 387, depicting deposits for convenience and we adopt it as the presumptive rule of joint checking accounts where the parties are husband and wife:

---

[4] The question of a fraudulent withdrawal by one of the parties, or withdrawals in contemplation of death, are not at issue herein and are not passed upon.

"There is authority that it will be presumed in the ordinary case of a deposit by a person in the name of himself and another that it was done for the purpose of convenience only. This rule is held to be subject to an exception, however, where the parties are husband and wife, for in such case the husband is presumed to have intended to benefit the wife by conferring upon her the right of survivorship."

The application of this rule to the present case requires reversal of the order instructing the personal representatives to file amended inventories.

It has been argued certain statements by Kilian Beisbier regarding Mrs. Beisbier's interest in the "Ziegler bonds," uttered while she was preparing her will, show an intent on his part to have created a joint tenancy in those bonds when they were purchased. Assuming this to be true, it could not change the result here because Kilian Beisbier outlived his wife and thus would have taken full interest in the bonds by right of survivorship at her death.

We must reverse with directions that the personal representatives be ordered to file inventories listing all the "Ziegler bonds" (items one through 31 and 56 through 60) and the Pontiac automobile (item 126) as assets only of the Kilian Beisbier estate.

*By the Court.*—Judgment reversed and cause remanded with directions.