# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
April 5, 2017 Session Heard at Jackson

### IN RE ESTATE OF CALVERT HUGH FLETCHER

**Appeal by Permission from the Court of Appeals**
**Probate Court for Putnam County**
No. 18589        Steven D. Qualls, Judge

_____

**No. M2015-01297-SC-R11-CV**

_____

A husband and wife deposited funds in a joint checking account designated with a right of survivorship. Later, the husband withdrew most of the funds from the joint account and placed the funds in a certificate of deposit issued solely in his name. After the husband's death, a dispute arose between his surviving spouse and his children from a previous marriage regarding ownership of the certificate of deposit. The trial court, relying on *Mays v. Brighton Bank*, 832 S.W.2d 347 (Tenn. Ct. App. 1992), held that the certificate of deposit was an asset of the husband's estate because the funds ceased to be entireties property when withdrawn from the joint account. The Court of Appeals reversed and, relying on *In re Estate of Grass*, No. M2005-00641-COA-R3-CV, 2008 WL 2343068, at *1 (Tenn. Ct. App. June 4, 2008), held that the certificate of deposit belonged to the surviving spouse because the funds were impressed with the entireties and could be traced to the joint account. We hold that once funds are withdrawn from a bank account held by a married couple as tenants by the entirety, the funds cease to be entireties property. Accordingly, the certificate of deposit issued to the husband from funds withdrawn from the joint bank account belongs to his estate, not his surviving spouse. We reverse the Court of Appeals and remand to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Henry D. Fincher, Cookeville, Tennessee, for the appellants, Elaine Fletcher, Janet L. Fletcher Brady, Richard H. Fletcher, and Peter J. Fletcher.

Kenneth S. Williams, Cookeville, Tennessee, for the appellee, Nelda Karene Fletcher.

Michael T. Harmon and Timothy L. Amos, Nashville, Tennessee, for Amicus Curiae, Tennessee Bankers Association.

**OPINION**

**I.**

In April 2012, Calvert Hugh Fletcher and his wife, Nelda Karene Fletcher, refinanced their home and paid off a line of credit secured by the home. They deposited most of the proceeds into a newly-opened joint checking account with FSG Bank. The FSG Bank account agreement designated the account as "JOINT – WITH SURVIVORSHIP (and not as tenants in common)." Funds could be withdrawn from the account based on the signature of either Mr. or Mrs. Fletcher.

In January 2013, Mr. Fletcher withdrew $100,000 from the joint checking account and obtained a $100,000 certificate of deposit solely in his name, issued by FSG Bank. The certificate of deposit was pledged as security for a $100,000 line of credit, although the line of credit was never used. In February 2013, the FSG joint checking account was closed.

Mr. Fletcher became ill in March 2013 and died on September 6, 2013. In his will, Mr. Fletcher bequeathed his tangible personal property and effects to Mrs. Fletcher and left the residuary estate to his four adult children from a prior marriage.

Mrs. Fletcher filed the will for probate in the Putnam County Probate Court and was appointed executrix for the estate. Mrs. Fletcher filed an estate inventory with the court, listing the certificate of deposit as a non-estate asset, and later filed a petition asking the probate court to designate the certificate of deposit as her separate marital property. Mr. Fletcher's children maintained that the certificate of deposit was estate property.

At the hearing to determine ownership of the certificate of deposit, Mrs. Fletcher testified that in April 2012, she and Mr. Fletcher opened a joint bank account in a money market fund at FSG Bank with an initial deposit of $100,415.73. Of these funds, $89,779.97 came from the refinancing of the mortgage on their marital home, and the rest of the money came from marital funds. Mrs. Fletcher said she knew Mr. Fletcher intended to use the funds in the joint account for potential future investments, but she did not agree for Mr. Fletcher to transfer $100,000 from the joint bank account into a

2

certificate of deposit issued solely in his name. Mrs. Fletcher testified she did not know the funds had been withdrawn until December 2013, when she spoke with a bank officer to receive an update on the couple's accounts.

Mrs. Fletcher admitted that she signed the joint account card that provided only one signature was required for withdrawal of funds. Mrs. Fletcher explained that she paid the family's bills and that bank statements were mailed to the marital home. Although her practice was to open and review the bank statements, Mrs. Fletcher did not recall seeing a statement evidencing a withdrawal in January 2013 of just over $100,000 or a statement indicating that the joint account had been closed in February 2013. Although Mrs. Fletcher knew that Mr. Fletcher was investing in real estate and working to develop Walden Villages subdivision when he became ill, she did not try to prevent him from investing. Mrs. Fletcher testified that she knew if he wanted to, Mr. Fletcher would use the money from the refinance loan for investment purposes. When asked if she would have agreed for Mr. Fletcher to withdraw $100,000 to purchase stock, Mrs. Fletcher acknowledged that he probably would not have asked her because that was his practice. Mrs. Fletcher agreed that she could have withdrawn $100,000 from the joint account but would not have done so.

Mr. Fletcher's daughter, Elaine Fletcher, testified that in April 2013, her father asked her to assist Mrs. Fletcher in repaying a loan. While at the Fletchers' home, Elaine Fletcher saw a statement on the kitchen table for an account only in her father's name containing $100,000, which she and Mrs. Fletcher discussed. Elaine Fletcher overheard Mrs. Fletcher's side of a conversation with FSG Bank Vice-President Howard Bilbrey. Elaine Fletcher also spoke with Mr. Bilbrey, who told her that the money was in a certificate of deposit and would be difficult to withdraw. When Elaine Fletcher relayed this information to Mrs. Fletcher, they were both surprised to learn the money was in a certificate of deposit, but Mrs. Fletcher was not surprised that it was in only Mr. Fletcher's name.

Janet Fletcher Brady, another of Mr. Fletcher's children, testified she came to help care for her father in March and April 2013. Ms. Brady said that Mrs. Fletcher knew of the investment in Walden Villages subdivision and that Mrs. Fletcher was handling the finances for herself and Mr. Fletcher.

The probate court ruled that the certificate of deposit was an asset of Mr. Fletcher's estate, relying on *Mays v. Brighton Bank*, 832 S.W.2d 347, 351 (Tenn. Ct. App. 1992), which held that the withdrawn funds ceased to be tenancy by the entirety property upon withdrawal. The probate court found that after the April 2013 telephone conversation with Mr. Bilbrey, Mrs. Fletcher knew or should have known that the certificate of deposit existed, or at least that the funds were held in something other than the Fletchers' joint checking account, and that she acquiesced in creating the certificate of deposit. Further, the probate court ruled that there was no proof of fraud, noting that Mr.

Fletcher directed FSB Bank to send the certificate of deposit account statements to the marital home. The probate court held that the funds from the Fletchers' joint account ceased to be entireties property. Because the certificate of deposit was only in Mr. Fletcher's name at the time of his death and there were no designations of payment on death to any individual, the certificate of deposit was part of Mr. Fletcher's estate.[1] Mrs. Fletcher appealed.

The Court of Appeals reversed and held that the funds in the certificate of deposit belonged to Mrs. Fletcher, as the certificate of deposit was entireties property at Mr. Fletcher's death. *In re Estate of Fletcher*, No. M2015-01297-COA-R3-CV, 2016 WL 3090920, at *10 (Tenn. Ct. App. May 23, 2016). The Court of Appeals noted the split of authority on this issue in the Tennessee appellate courts and in other jurisdictions. *Id.* at *4. *Compare Mays v. Brighton Bank*, 832 S.W.2d 347, 350–51 (Tenn. Ct. App. 1992) (following *McEntire v. Estate of McEntire*, 590 S.W.2d 241, 244–45 (Ark. 1979) (holding that the wife's withdrawal of funds from a joint account eliminated the entireties nature of the funds)), *with In re Estate of Grass*, No. M2005-00641-COA-R3-CV, 2008 WL 2343068, at *14 (Tenn. Ct. App. June 4, 2008) (following *Madden v. Gosztonyi Sav. & Trust Co.*, 200 A. 624, 630–31 (Pa. 1938) (holding that funds withdrawn from a marital account remained impressed as entireties property and receipt of the property was subject to the entirety provision)). The Court of Appeals rejected *Mays* and relied on *Grass*, based on its conclusion that a spouse's ownership interest should not cease because the other spouse withdrew funds from the joint account. *Fletcher*, 2016 WL 3090920, at *9. Further, the Court of Appeals reasoned that the joint account agreement should not be construed as proof of prior consent to termination of the tenancy by the entirety through unilateral withdrawal. *Id.* at *9–10. The intermediate appellate court concluded that the evidence did not establish that Mrs. Fletcher agreed to give up her entirety interest in the funds withdrawn by Mr. Fletcher. *Id.* at *10. The Court of Appeals held that the certificate of deposit passed to Mrs. Fletcher as the surviving spouse because the funds were impressed with the entirety provision. *Id.*

We granted the application for permission to appeal filed by Mr. Fletcher's children.

## II.

This matter was heard without a jury; therefore, our standard of review is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Cross v. City of Memphis*, 20 S.W.3d 642, 645 (Tenn. 2000) (citing Tenn.

---

[1] The trial court certified the order as final, finding "no just reason for delay" under Rule 54.02 of the Tennessee Rules of Civil Procedure.

4

R. App. P. 13(d)). There is no presumption of correctness, however, as to the trial court's legal conclusions. *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 366 (Tenn. 2012) (citing *Hall v. Haynes*, 319 S.W.3d 564, 571 (Tenn. 2010); *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 226 (Tenn. 2010)).

Under Tennessee law, a married couple can own property as tenants by the entirety. *See Bryant v. Bryant*, 522 S.W.3d 392, 400 (Tenn. 2017) (citing *Griffin v. Prince*, 632 S.W.2d 532, 534–35 (Tenn. 1982); Tenn. Code Ann. §§ 36-3-505, 31-1-108). Tenancy by the entirety is a form of property ownership unique to married persons. *Grahl v. Davis*, 971 S.W.2d 373, 378 (Tenn. 1998) (citing *Griffin*, 632 S.W.2d at 534). Each spouse holds an interest in the entirety—the whole property—rather than in undivided parts. *Bryant*, 522 S.W.3d at 400–01 (quoting *Tindell v. Tindell*, 37 S.W. 1105, 1106 (Tenn. Ch. App. 1896)). "When property is held in a tenancy by the entirety, upon the death of one spouse, the survivor continues to own the whole in fee simple," *Id.* at 400, and the laws of descent and distribution do not apply. *Grahl*, 971 S.W.2d at 378 (citing *Sloan v. Jones*, 241 S.W.2d 506, 509 (Tenn. 1951)). Married couples can own both real property and personal property, including bank accounts, as tenants by the entirety. *Griffin*, 632 S.W.2d at 535 (citing *Campbell v. Campbell*, 66 S.W.2d 990 (Tenn. 1934); *Smith v. Haire*, 181 S.W. 161 (Tenn. 1915)). When the property is real estate held as a tenancy by the entirety, one spouse cannot unilaterally sever the tenancy by transferring a portion of the property to a third party without the consent of the other spouse because doing so would destroy the other spouse's ownership interest in the whole. *Bryant*, 522 S.W.3d at 401 (citing *Tindell*, 37 S.W. at 1106); *see also Sloan*, 241 S.W.2d at 509 (stating that when a married couple acquired real estate, "there would be no question . . . that upon the death of one[,] the survivor would take the entire real estate").

Bank accounts are treated differently given the nature of the asset. Unlike real property, portions of a joint bank account can be unilaterally withdrawn without severing or destroying the tenancy. *See* Tenn. Code Ann. § 45-2-703(c) (1988) (defining "multiple-party deposit account" as an account established in the names of or subject to withdrawal by two or more persons).

Here, the Fletchers' FSG Bank account was designated, "JOINT – WITH SURVIVORSHIP (and not as tenants in common)." The parties do not dispute that Mr. and Mrs. Fletcher held the joint account as tenants by the entirety.[2] A joint bank account held by husband and wife is presumed to be a tenancy by the entirety absent proof to the contrary. *Grahl*, 971 S.W.2d at 378 (citing *Griffin*, 632 S.W.2d at 536). Words in a legal instrument that make two persons joint tenants or tenants in common create a tenancy by

---

[2] Here, no issue was raised as to whether the designation on a bank's signature card as "JOINT – WITH SURVIVORSHIP (and not as tenants in common)" was sufficient to overcome the presumption that the bank account was held as tenants by the entirety.

the entirety in an account held by husband and wife. *Griffin*, 632 S.W.2d at 535 (citing *First Am. Nat'l Bank v. Evans*, 417 S.W.2d 778, 780–81 (Tenn. 1967); *Bennett v. Hutchens*, 179 S.W. 629 (Tenn. 1915)). This is the case even if the account cards do not use the words, "tenants by the entirety," or use the word, "joint." *Id.* at 536.

Although the Fletchers could have provided that both of their signatures were required for a withdrawal of funds, they agreed that either signature was sufficient to withdraw funds. Based on the terms of the account agreement, at the death of one spouse, the surviving spouse retained ownership over any funds in the account. Mr. Fletcher, as authorized by the account agreement, withdrew funds from this joint checking account without his wife's signature. He then placed the funds in a certificate of deposit solely in his name. Upon Mr. Fletcher's death, Mrs. Fletcher continued to own the funds in the bank account.

The issue before us is whether the certificate of deposit, consisting of funds withdrawn from the joint account, belongs to Mr. Fletcher's estate upon his death, or if the withdrawn funds are impressed with the entirety such that the certificate of deposit belongs to Mrs. Fletcher as his surviving spouse. There is a split of authority on this issue in Tennessee and in courts across the country. It is a matter of first impression for this Court.

In *Sloan v. Jones*, 241 S.W.2d 506 (Tenn. 1951), the Tennessee Supreme Court was not presented with the issue. However, the Court cited with approval the Pennsylvania case of *Madden v. Gosztonyi Sav. & Trust Co.*, 200 A. 624, 630 (Pa. 1938), for the proposition that bank deposits payable to "husband and wife" or to "husband or wife" are held by them as tenants by the entirety. *Sloan*, 241 S.W.2d at 508. The Supreme Court in *Sloan* held that a tenancy by the entirety may be created by a joint bank deposit, where the parties demonstrate an intent to jointly own the account or such intent can be inferred from the circumstances. When an account is made payable to either "husband and wife" or "husband or wife," each has the power to act for the other as an incident of an estate by the entirety. *Id.* (quoting *Madden*, 200 A. at 630). Through this implied agency or authority, the husband or the wife may "withdraw the entire account, but the money thus withdrawn is impressed with the entirety provision that it is the property of both." *Id.* at 509 (quoting *Madden*, 200 A. at 631 (internal quotation marks omitted)). Anyone dealing with such specific property knowing it belongs to both spouses "must submit to the consequences." *Id.* (quoting *Madden*, 200 A. at 631 (internal quotation marks omitted)). Although this additional language had little to do with our ultimate holding in *Sloan*, the *Madden* language resurfaced many years later as tenancy by the entireties principles and the application of those principles to bank accounts developed further.

In *Griffin v. Prince*, 632 S.W.2d 532 (Tenn. 1982), this Court considered whether an individual creditor of the husband could garnish the husband and wife's joint checking

6

and savings accounts. The accounts were held in the name of Mr. *or* Mrs. Prince, and the signature cards for the accounts indicated that they were joint accounts with the right of survivorship. *Id.* at 533–34. The Tennessee Supreme Court ordered the dismissal of the garnishment. *Id.* at 538. Relying on *Sloan* and *Madden*, the Court determined that the fact the account cards did not use the words, "tenants by the entirety," or that they used the word, "joint," did not prevent ownership by the entirety if the depositors were married when the account was created and were still married at the time of the garnishment. *Id.* at 536.

The *Griffin* Court briefly addressed the import of the banking statute, Tennessee Code Annotated section 45-2-703, which, at the time, provided:

> (a) When a deposit has been made or shall hereafter be made, in any bank in the names of two (2) or more persons, payable to either, or survivor, such deposit, or any part thereof, . . . whether the others be living or not; and the receipt or acquittance of such person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made.

Tenn. Code Ann. § 45-2-703(a) (1980), *quoted in Griffin*, 632 S.W.2d at 537. The statute did not abolish tenancy by the entirety in bank deposits held by spouses or change the fundamental form of property ownership in bank accounts because the accounts were payable to either spouse or subject to individual checking or withdrawal. *Griffin*, 632 S.W.2d at 537.

After *Griffin*, the General Assembly amended section 45-2-703(a) by adding the following sentence to protect the interest of creditors:

> Any balance so created shall be subject to assignment by, or the claim of any creditor of, either depositor, as if such depositor were the sole owner of the funds; provided, however, that if such creditor realizes its claim, by garnishment, set off, or otherwise, any other depositor may, by appropriate action against the creditor, establish such rights as that depositor may have in the funds.

Tenn. Code Ann. § 45-2-703(a) (1983). This amendment made no substantive change relative to joint bank accounts created by husband and wife and did not repudiate *Griffin*. *Edwards v. Edwards*, 713 S.W.2d 642, 646 (Tenn. 1986).

In 1988, the General Assembly again amended section 45-2-703(a) by adding the following language:

> Any balance so created, *including, without limitation, any balance held by spouses*, shall be subject to assignment by, or the claim of any creditor of,

7

either depositor, as if such depositor were the sole owner of the funds; provided, that if such creditor realizes its claim by any means other than enforcement of an assignment, pledge, or the grant of a security interest made by any one (1) of such depositors, any other depositor not indebted to the creditor may, by commencing a separate action against the creditor, establish such rights as that depositor may have in the funds.

Tenn. Code Ann. § 45-2-703(a) (Supp. 1993) (emphasis added). These statutory amendments clarified the rights of creditors and the other account owner(s) but did not address the legal status of property acquired with funds withdrawn unilaterally by one of the account owners.

The Court of Appeals in *Mays v. Brighton Bank*, 832 S.W.2d 347 (Tenn. Ct. App. 1992), addressed the issue concerning the legal status of property acquired in part with an individual loan deposited into a joint bank account owned by a husband and wife as tenants by the entirety. Mr. Mays borrowed money to purchase a horse trailer to give to his wife; his wife was not a party to the loan agreement. *Id.* at 348. The terms of the loan granted the bank a security interest in the trailer. The loan proceeds were deposited into the Mayses' joint account, from which Mrs. Mays made the down payment and final payment for the trailer. *Id.* at 349. When she made the final payment, Mrs. Mays received a certificate of origin that assigned ownership of the trailer solely to her. No liens were recorded on the trailer's certificate of origin. When the parties divorced shortly after the purchase of the trailer, the bank repossessed the trailer. Mrs. Mays brought a detainer action against the bank to recover the trailer. *Id.* at 348–49. The trial court held that the bank had a purchase money security interest in the trailer. *Id.* at 352. Citing *Sloan* and *Griffin*, the trial court determined that Mr. and Mrs. Mays each owned the loan funds deposited into their joint account as tenants by the entirety. *Id.* at 350. However, property purchased by one spouse with funds withdrawn from the bank account held by the spouses does not automatically become tenancy by the entirety property; instead, the legal status of property purchased with the funds depends on the legal status of the funds. The Court of Appeals affirmed, recognizing a split of authority as to whether the property purchased with funds withdrawn from a tenancy by the entirety account continues to be tenancy by the entirety property. The Court of Appeals noted that some courts follow the Arkansas approach, which states that, where one account owner withdraws funds from a tenancy by the entirety account or simply removes the other party's name from the joint account, the other party's interest in the affected funds ends. *See id.* (citing *McEntire*, 590 S.W.2d 241; *Bealert v. Mitchell*, 585 S.W.2d 417 (Ky. App. 1979)). Other jurisdictions follow the Pennsylvania approach, under which funds removed from tenancy by the entirety accounts continue to be tenancy by the entirety property. *See id.* (citing *Matter of Morrow's Estate*, 570 P.2d 912 (N.M. 1977); *Madden*, 200 A. 624).

The Court of Appeals, adopting the Arkansas approach, reasoned that for Mr. Mays to have given the trailer to Mrs. Mays as a gift, he must first have had an interest in

the property. *Id.* at 351. Mr. Mays intended the trailer to be the gift, not the funds used to purchase it. Thus, Mrs. Mays had acted as her husband's agent when she paid for the trailer, and Mr. Mays' (and thus the bank's) interest in the trailer existed *before* the certificate of origin was issued to Mrs. Mays. *Id.* at 351–52. Accordingly, Mrs. Mays took the trailer subject to the bank's security interest. *Id.* at 352.

In *Grahl v. Davis*, 971 S.W.2d 373 (Tenn. 1998), this Court did not overrule *Mays* but noted that *Mays* was inconsistent with *Sloan* and *Griffin. Id.* at 379 n.3. In *Grahl*, the issue was whether a conservator had violated her fiduciary duties; the case did not concern the legal status of funds withdrawn from a tenancy by the entirety account. *Id.* at 379. In a footnote, the Court briefly summarized *Mays*, *Griffin*, and *Sloan* and commented that "*Mays* appears to be inconsistent with this Court's prior decisions." *Id.* at 379 n.3 (quoting *Griffin*, 632 S.W.2d at 536 (internal quotation marks omitted)).

The Court of Appeals in *In re Estate of Grass*, No. M2005-00641-COA-R3-CV, 2008 WL 2343068 (Tenn. Ct. App. June 4, 2008), determined that *Mays* was inconsistent with the Supreme Court's prior decision in *Sloan. Id.* at *14 (quoting *Grahl*, 971 S.W.2d. at 379 n.3). In *Grass*, the Court of Appeals considered whether the probate court erred in classifying as a fraudulent conveyance funds the decedent wife had withdrawn from a joint account with her husband and placed in two accounts payable to her children upon her death. *Id.* at *6, *12. The intermediate appellate court remanded the case to the probate court to determine how the decedent and her husband held the bank account, and if they held the account as tenants by the entirety, whether the money withdrawn by one spouse continued to be held as tenants by the entirety property. *Id.* at *13. The Court of Appeals ruled that, if the probate court determined that the decedent and her husband held their joint bank account as tenants by the entirety, then the withdrawn funds were impressed with the entirety provision. *Id.* at *14. Further, the Court of Appeals held that a tenancy by the entirety can be terminated only when both spouses convey, when one spouse dies and the survivor becomes owner of the whole, or when the parties divorce and become tenants in common in the property. *Id.* (quoting *White v. Watson*, 571 S.W.2d 493, 495 (Tenn. Ct. App. 1978)). Therefore, if the joint account was held as a tenancy by the entirety and the husband did not agree to the transfer of the funds, then upon the decedent's death, the funds vested to the husband, not to the decedent's children. *Id.* (citing *Sloan*, 241 S.W.2d at 507). By relying on *Sloan*, the Court of Appeals implicitly adopted the Pennsylvania approach while rejecting *Mays* and the Arkansas approach.

The Pennsylvania approach was first stated by the Pennsylvania Supreme Court in *Madden v. Gosztonyi Sav. & Trust Co.*, 200 A. 624 (Pa. 1938):

> Where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, but the money thus withdrawn *is impressed*

*with the entirety provision that it is the property of both*, and any one dealing with such specific property as severalty, knowing it belongs to both, must submit to the consequences.

*Id.* at 631, *quoted in Sloan*, 241 S.W.2d at 507. The *Madden* court reasoned that "either spouse presumptively has the power to act for both . . . without any specific authorization, provided the fruits or proceeds of such action inures to the benefit of both and the estate is not terminated." *Id.* at 630–31. Neither party may destroy the "true purpose" of the estate by the entirety by attempting to convert it or a part of it, in bad faith, into an estate held in severalty. *Id.* at 631.

This approach taken by the Pennsylvania courts has been followed by the courts of other states. *See, e.g.*, *Moser v. Moser*, 287 A.2d 398, 400 (Del. 1972) (holding that property acquired with joint funds remains the joint property of the spouses even if title is taken in the name of one spouse); *Morrison v. Potter*, 764 A.2d 234, 238 (D.C. App. 2000) (finding that unilateral withdrawal of funds from a joint bank account does not defeat a tenancy by the entireties estate because each spouse acts as the other's agent and consents in advance to each other's withdrawal); *Ambruster v. Ambruster*, 31 S.W.2d 28, 37 (Mo. 1930) (finding that a joint account allowing either co-owner to withdraw funds raises a presumption or inference that the joint interest follows the funds and does not result in a severance of the funds from the joint estate).

While the Pennsylvania approach protects the surviving spouse's ownership interests, the Arkansas approach allows for the unilateral termination of the tenancy by the entirety. Under the Arkansas approach, "[f]unds withdrawn or otherwise diverted from the account by one of the tenants and reduced to that tenant's separate possession ceases to be a part of the estate by the entireties." *McEntire*, 590 S.W.2d at 244 (citing *Black v. Black*, 135 S.W.2d 837 (Ark. 1940); *McGuire v. Benton State Bank*, 342 S.W.2d 77 (Ark. 1961)). In *McEntire*, the decedent held an individual checking account and obtained a new signature card for his wife, permitting either to withdraw funds from the account but retaining the account only in Mr. McEntire's name. *Id.* at 242. Both Mr. and Mrs. McEntire occasionally withdrew funds from the account on his or her individual signature. Mr. McEntire had a new signature card issued in his name only, ending Mrs. McEntire's authority to withdraw funds from the account. Under a then-applicable Arkansas statute, bank accounts held in the names of persons who designate themselves as husband and wife are held by the married couple as tenants by the entireties, and upon the death of one of the persons, the account is payable to the survivor. *Id.* at 244 (citing Ark. Code Ann. § 67-552). The statute further provided that the banking institution shall pay withdrawal requests and otherwise deal in any manner with the account upon the direction of any one of the persons on the account. *Id.* (citing Ark. Code Ann. § 67-552). The Arkansas Supreme Court held that when funds are withdrawn by one of the tenants and reduced to that tenant's separate possession, those funds cease to be part of the estate

by the entireties. *Id.* (citing *Black*, 135 S.W.2d at 840; *McGuire*, 342 S.W.2d at 78). The Arkansas Supreme Court ruled for the estate and the bank. *Id.* at 245.

The Arkansas Supreme Court re-affirmed this ruling in *Cloud v. Brandt*, 259 S.W.3d 439 (Ark. 2007), where a husband withdrew funds from a joint checking account held with his wife as tenants by the entirety, deposited the funds into a separate checking account in his name, and then purchased certificates of deposit with funds from his individual account. *Id.* at 440–41. When the husband died, the wife sought a declaratory judgment that the certificates of deposit belonged to her as the surviving tenant of a tenancy by the entirety in the joint funds. *Id.* at 441. The Arkansas Supreme Court held that, because one spouse is not required to obtain the other spouse's consent to withdraw funds from a tenancy by the entirety account, the decedent did not need to obtain the other spouse's consent to destroy the tenancy by the entirety in the joint account and could do so unilaterally. *Id.* at 444. As the surviving tenant by the entirety, the wife was entitled to only the balance of funds in the joint account at the time of her husband's death.

Several jurisdictions follow the Arkansas approach. *See, e.g.*, *In re Estate of Vogel*, 684 N.E.2d 1035, 1038 (Ill. App. Ct. 1997) (holding that a party to a joint bank account who withdraws all the funds from the account is not liable to the other joint depositors for the withdrawn funds); *Casagranda v. Donahue*, 585 P.2d 1286, 1288 (Mont. 1978) (holding that either owner of a joint bank account can acquire the whole account by withdrawing it during the lifetime of the co-owner or by survivorship); *Rose v. Hooper*, 122 N.W.2d 753, 759 (Neb. 1963) (finding that the withdrawal of funds from a joint account destroys joint ownership in the funds and property purchased with the withdrawn funds, regardless of the consent of the other joint owners and reinvestment by the person withdrawing the funds in property owned individually or with others); *In re Estates of Beisbier*, 177 N.W.2d 919, 923–24 (Wis. 1970) (holding that a wife's estate had no claim to bonds purchased from joint checking account and owned solely by the surviving husband, noting that a joint checking account is more "a shared wallet than a shared investment").

In our view, the Arkansas approach reflects the better approach in light of our current banking environment. When either spouse is authorized to withdraw funds from a joint bank account (as indicated on the signature card), this grant of authority reflects the basic trust a husband and wife have in each other.[3] Each spouse fully expects the other spouse to make regular withdrawals from the account without the need for approval by

---

[3] There is no allegation or evidence that Mr. Fletcher acted fraudulently by withdrawing $100,000 from the joint account or by placing the certificate of deposit in his individual name. Therefore, we need not address the status of funds withdrawn from a joint account by one spouse under circumstances suggesting an intent to defraud, to avoid creditors, or to defeat the interests of a spouse in anticipation of divorce.

the non-withdrawing spouse in every transaction. Under the Arkansas approach, the funds, once withdrawn, cease to be entireties property. The legal status is clear, and all parties know their respective positions.

The Pennsylvania approach does not provide the needed clarity and finality necessary in the banking arena. This approach arguably leads to uncertainty in banking transactions and may often result in tracing joint funds long after the funds have been spent. As a practical matter, it is difficult, if not impossible, for the third party receiver of such funds to know of the entireties source or character of the funds, resulting in the possibility that the non-withdrawing spouse could later object to the earlier withdrawal. One could certainly be swayed by equity to side with the Pennsylvania approach when the withdrawn sum is rather large as in this case. However, the sum involved must not be determinative and instead must give way to the clarity and certainty provided by the Arkansas approach. Whether the withdrawal was $100 or $100,000, the policy considerations must be consistent. To the extent that *Sloan*, *Griffin*, *Grahl*, and *In re Estate of Grass* are inconsistent with this opinion, they are overruled.

## III.

We adopt the Arkansas approach and hold that, once a husband or wife withdraws funds from a joint bank account held as tenants by the entirety, the funds cease to be held by the entirety. When Mr. Fletcher withdrew funds from the Fletchers' joint account, those funds ceased to be property held by the entirety. The certificate of deposit purchased with the withdrawn funds and issued to Mr. Fletcher individually belonged only to Mr. Fletcher. When he died, the certificate of deposit became part of Mr. Fletcher's estate and did not pass outside the estate to his surviving spouse. Accordingly, we reverse the decision of the Court of Appeals and remand to the trial court. Costs of this appeal are taxed to appellee, Nelda Karene Fletcher, for which execution may issue if necessary.

_____

SHARON G. LEE, JUSTICE

12