IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2021

## PAULA HARRIS, CONSERVATOR FOR SAUNDRA RICHEY v. RUEBEN "ROYCE" RICHEY ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 19CV-48682B          Michael W. Binkley, Judge**

———————————————————

**No. M2021-00331-COA-R3-CV**

———————————————————

This appeal arises from a divorce action, in which the wife's conservator alleged that the husband had been dissipating marital assets and had withdrawn money from joint accounts. As a result, the trial court ordered the husband to deposit the withdrawn funds with the court's clerk and master. The wife passed away before the trial court could adjudicate the divorce action. The husband filed a motion requesting that the court return the funds to him because the divorce action had abated upon the wife's death. The trial court dismissed the suit but denied the husband's motion and ordered the clerk and master to continue holding the funds until they could be transferred to the probate court upon the filing of a petition to probate the wife's estate. The husband has appealed. Having determined that the trial court erred by exercising subject matter jurisdiction over the disposition of the funds after the divorce action had abated, we reverse the trial court's decision to withhold the funds from the husband and retain them with the clerk and master.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and KENNY W. ARMSTRONG, JJ., joined.

Robert H. Plummer, III, Franklin, Tennessee, for the appellant, Rueben "Royce" Richey.

Peggy S. Pulley, Ashland City, Tennessee, for the appellee, Paula Harris, Conservator for Saundra Richey.

**OPINION**

## I. Factual and Procedural Background

In May 2019, Saundra Richey ("Wife") vacated the marital residence where she had lived with the respondent, her husband, Reuben "Royce" Richey ("Husband"), and was hospitalized as a result of dementia. The petitioner, Paula Harris, became Wife's appointed conservator ("Conservator") in August 2019. On September 3, 2019, Conservator filed a petition in the Williamson County Chancery Court ("trial court") for legal separation on behalf of Wife, alleging, *inter alia*, that Husband and Christy Schrage, Husband's daughter from a previous marriage, had removed $30,000.00 from a Wells Fargo joint checking account; $60,000.00 from a Regions joint checking account; sold $11,867.79 worth of joint stock; sold $87,519.11 of additional joint stock; and removed $144,658.96 from a joint Ameritrade account. According to the petition for legal separation, Husband made these withdrawals in July and August of 2019. Ms. Schrage alleged in a subsequent motion that Husband thought Conservator was "scheming to try to take his money" and that Conservator had told her that she had filed the petition for legal separation to protect Conservator's children's interest in Wife's assets as beneficiaries named in Wife's will.[1]

Conservator requested in the petition for legal separation that the trial court issue an *ex parte* emergency restraining order to protect Wife's share of marital assets and enjoin Husband and Ms. Schrage from "transferring, utilizing, accessing, hiding or any way disposing of ANY marital property." On September 3, 2019, the trial court granted Conservator's request, entering a temporary restraining order, pursuant to Tennessee Code Annotated section 36-4-106(d) (2021), and an order to appear and show cause. The trial court also directed Husband to provide the court with a full accounting of "all funds removed by [Husband] and[/]or Ms. Schrage from each one of the accounts listed in the petition for legal separation."

On September 19, 2020, Conservator filed a motion for civil contempt, alleging that Husband had violated the temporary restraining order by dissipating $856.34 of marital funds and failing to provide a full accounting of the withdrawn funds. In an order entered on September 20, 2019, the trial court found that Husband had failed to render the accounting. Consequently, Husband was ordered to submit the filing. In addition, the trial court directed that the temporary restraining order remain in "full force and effect" with the exception of Husband's monthly income of $8,291.25, which Husband was permitted to use for living expenses. The court also ordered the remaining marital funds that had been withdrawn to be deposited into Wife's attorney's escrow account. However, once Husband and Ms. Schrage provided the court with a complete accounting and a check in

---

[1] Conservator's children are named as beneficiaries in Wife's will and are identified as Wife's grandchildren. Therefore, it appears that Conservator is a daughter of Wife from a previous marriage.

the amount of $179,340.23, the court instead determined that the funds should be deposited with the clerk and master in an interest-bearing account.

On October 8, 2019, Husband filed a counter-petition for divorce and an answer to Wife's petition for legal separation. Before the trial court had the opportunity to adjudicate either Wife's petition for legal separation or Husband's counter-petition for divorce, Wife passed away on October 24, 2020. On November 4, 2020, Husband filed a motion to dismiss Wife's petition for legal separation and requested that the court enter an order returning the funds being held by the clerk and master to him, arguing that the case had abated upon Wife's death.

Conservator filed a response to Husband's motion, acknowledging that Wife had died but contesting Husband's request for immediate return of the funds held in the registry of the court. Conservator posited that although the funds had previously been owned by Husband and Wife jointly, the funds ceased to be held by the entirety when Husband placed the funds in an account solely in his name. Therefore, according to Conservator, the funds became "individually owned marital funds subject to division by the court," and a portion belonged to Wife's estate. Furthermore, Conservator contended that the executrix of Wife's estate would be able to file "for a determination of the exact amount that should be released to each party." Nonetheless, Conservator further alleged that the executrix's attorney had indicated to her that the executrix would not be requesting that the trial court determine the amount that should be paid to Wife's estate or seeking those funds on behalf of Wife's estate.[2] In turn, Conservator requested that the court not dismiss the instant action or, in the alternative, retain the funds held by the clerk and master "pending the outcome of any motions filed in the Probate Court."

The trial court conducted a hearing to address Husband's motion on November 19, 2020. The court entered an order on December 14, 2020, in which it, *inter alia*, continued the hearing to January 14, 2021; ordered Husband to file a suggestion of death and a death certificate evincing Wife's death; determined that it would retain jurisdiction over the issue of payment of reasonable attorney's fees from the funds maintained by the clerk and master; and determined that it would retain jurisdiction over the remaining funds held in the court's registry "until such time as [Wife's] estate is opened for probate and said funds can be transferred to the appropriate Probate Court." Thereafter, Husband filed a suggestion of death and death certificate indicating that Wife had passed away on October 24, 2020.

---

[2] Although Conservator does not name the executrix in her response, Wife's Last Will and Testament lists Husband and Margaret O'Neal Dunn as co-executors of the will. Husband's attorney in this matter, Robert H. Plummer, III, was the attorney who prepared Wife's will and was permitted to continue to represent Husband by agreed order entered on September 19, 2019. Conservator alleged in her response that Mr. Plummer represented the "executrix" as well as Husband and that Mr. Plummer had indicated that the executrix would not be requesting that the trial court determine the amount of funds to be paid to Wife's estate.

Husband subsequently filed a motion requesting that the trial court return to him at least one-half of the funds held by the clerk and master by reason that only one-half of the funds would be subject to the probate court's jurisdiction. Husband argued that there would be no basis for the entire amount to be controlled by the trial court. Husband also asserted that he had been financially dependent upon the rental income from his business and that these rental payments had ceased in December 2020. Therefore, according to Husband, he needed the funds held by the clerk and master in order to defray his current living expenses.

On January 11, 2021, a guardian *ad litem*, whom the trial court had appointed to determine Husband's best interest, filed a response in support of Husband's motion, asserting that Husband needed funds for living expenses.[3] Conservator filed a response on January 11, 2021, contending that the trial court had already determined that the funds held by the clerk and master would be transferred to the probate court. Thus, she postulated that Husband's motion was nothing more than a request for a "second bite at the apple."

Upon conducting a second hearing concerning Husband's motion to dismiss and return funds as well as his separate motion to return one-half of the funds, the trial court entered an order on February 1, 2021, determining:

> Petitioner/Wife passed away on October 24, 2020 and as such it is appropriate to dismiss this case in its entirety.
>
> It is of the utmost urgency that the proper petition is filed to open the Estate of [Wife] for probate.
>
> Respondent/Husband has lost his primary source of income with the final closing of his business.
>
> As the Court retained jurisdiction over the marital funds at the last hearing held on November 19, 2020, it is within the Court's authority and discretion to provide funds from those held by the Williamson County Chancery Court Clerk and Master to Respondent/Husband for living expenses and to pay property taxes prior to turning them over to the Probate Court handling the Estate of [Wife].
>
> All attorneys have provided the Court with affidavits of fees as ordered on November 19, 2020 and, as the Court retained jurisdiction over

---

[3] In an order entered on September 16, 2020, the trial court appointed a guardian *ad litem* to discern the best interest of Husband, who was then ninety-three years old. The court entered this order due to its concern that Ms. Schrage may have been taking advantage of Husband. However, the guardian *ad litem* concluded in her report that Ms. Schrage's actions with respect to Husband's funds were not "malicious or criminal."

- 4 -

previously stated marital funds, it is within the Court's authority and discretion to review the affidavits and make a determination of awarding the fees from said marital money.

While this Court understands the situation [Husband] finds himself in, the Court does not feel it appropriate to grant his motion as written for one-half of the marital assets at this time.

(Paragraph numbering omitted.) As a result, the trial court dismissed Wife's petition for legal separation and Husband's counter-petition for divorce; ordered the clerk and master to disburse funds for the payment of property taxes and $4,000.00 for Husband's living expenses; and declared that its prior order "that the remaining marital funds shall stay within the jurisdiction of this Court until a petition is filed to probate the Estate of [Wife] shall remain in effect."

On March 1, 2021, the trial court entered separate orders granting requests for reasonable attorney's fees from Wife's attorney, Husband's attorney, and the guardian *ad litem*. Husband timely appealed.

## II. Issue Presented

Husband presents one issue on appeal, which we have restated slightly as follows:

Whether the trial court erred by determining that it retained subject matter jurisdiction over the disposition of marital funds after the divorce action had abated with Wife's death.[4]

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *In re Estate of Fletcher*, 538 S.W.3d 444, 448 (Tenn. 2017) ("This matter was heard without a jury; therefore, our standard of review is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise."). However, our review of the court's legal conclusions is *de novo* with no presumption of correctness. *Estate of Fletcher*, 538 S.W.3d at 448; *see Blankenship v. Blankenship*, 59 S.W.3d 115, 117 (Tenn. Ct. App. 2001).

Whether a court has subject matter jurisdiction over a case is a question of law, reviewed *de novo* with no presumption of correctness. *Word v. Metro Air Servs., Inc.*, 377

---

[4] Conservator did not file a brief in response.

S.W.3d 671, 674 (Tenn. 2012). Subject matter jurisdiction "involves a court's power to adjudicate a particular controversy brought before it." *First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001). Our Supreme Court has previously concluded that "issues regarding a court's subject matter jurisdiction should be considered as a threshold inquiry" and "should be resolved at the earliest possible opportunity." *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012).

> Concerning the applicable standard of review, this Court has explained:
>
> A challenge to the court's subject matter jurisdiction calls into question the court's authority to adjudicate the controversy before it. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012). Subject matter jurisdiction can only be conferred by the constitution or a legislative act. *Id.* When a party challenges a court's subject matter jurisdiction, the court must "determine the gravamen of the case and identify the source of its power to adjudicate that type of controversy." *Word v. Metro Air Servs., Inc.*, 377 S.W.3d 671, 674 (Tenn. 2012). The question of whether a court has subject matter jurisdiction over a case is a question of law, which we review de novo with no presumption of correctness. *Id.*

*Roland Digital Media, Inc. v. City of Livingston*, No. M2018-00163-COA-R3-CV, 2019 WL 117582, at *4 (Tenn. Ct. App. Jan. 7, 2019).

### IV. Subject Matter Jurisdiction Over Disposition of Funds

Husband argues that the trial court no longer maintained subject matter jurisdiction over the disposition of the funds held by the clerk and master after Wife passed away and the actions for legal separation and divorce abated. We agree with Husband that the legal separation and divorce actions, along with any ancillary matters, abated upon Wife's death, depriving the trial court of judicial power to retain the funds held in the registry of the court.

As our Supreme Court has previously noted: "It is a well-settled principle of law that a pending divorce action, being purely personal in nature, abates upon the death of one of the parties." *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *see Steele v. Steele*, 757 S.W.2d 340, 342 (Tenn. Ct. App. 1988) ("[I]f an action for a divorce is commenced, and one of the parties dies thereafter, but before the entry of the final decree, the action abates."). Furthermore, when the suit abates upon the death of the party, "the jurisdiction of the court to proceed with the suit is terminated." *Steele*, 757 S.W.2d at 342. The termination of the divorce action also "abates all ancillary or interlocutory decrees." *McMahon v. Butler*, No. 85-349-II, 1986 WL 5894, at *2 (Tenn. Ct. App. May 23, 1986) (citing *Keidel v. Keidel*, 383 A.2d 264, 267 (R.I. 1978) (concluding that an "interlocutory

decree to partition real estate, being ancillary to the court's divorce jurisdiction, must abate when the divorce action itself abates.")); *but see Coleman v. Olson*, 551 S.W.3d 686, 697 (Tenn. 2018) ("[A] trial court should have the authority to 'right a wrong' and remedy an injustice based on equitable considerations when a party violates a statutory injunction and later dies while the divorce action is pending.").

In the present case, no final decree of divorce appears in the record, and it is undisputed that the trial court had not yet adjudicated Wife's petition for legal separation or Husband's counter-petition for divorce when Wife died. As such, the divorce action was still pending at the time of Wife's death in October 2020. Ergo, the trial court correctly dismissed the actions for legal separation and divorce by its February 1, 2021 order.

However, upon careful review, we determine that the trial court erred in determining that it retained subject matter jurisdiction over the disposition of funds maintained by the clerk and master. These funds were originally held as a consequence of the legal separation and divorce actions and, accordingly, the holding of funds by the court was ancillary to those actions. The court ordered Husband to deposit the funds with the court upon Conservator's request for a temporary restraining order in the petition for legal separation in order to protect Wife's "share of the marital assets" after Husband had withdrawn funds from joint bank accounts. Upon Wife's death, the funds were no longer subject to division by the court upon separation or divorce inasmuch as such actions had abated and could not proceed. Therefore, without the underlying actions for legal separation and divorce, the trial court lacked subject matter jurisdiction concerning the disposition of funds and had no judicial power to withhold them from Husband. *See Steele*, 757 S.W.2d at 342 ("The judicial power is ended when a party dies before the entry of a decree . . . .").

Although our High Court appeared to reject a strict application of the abatement rule in *Coleman v. Olson*, we find the facts of that case distinguishable from the facts of the present one and conclude that the exception to the abatement rule recognized in *Coleman* has no application here. *See Coleman*, 551 S.W.3d at 696-97 (citing *Aither v. Estate of Aither*, 913 A.2d 376, 379 (Vt. 2006)) (adopting the Vermont Supreme Court's "flexible approach that would allow the trial court to remedy the violation of the injunctive order, after a divorce action had abated, by considering the equities of the parties.").

*Coleman* involved a situation in which the wife sued her husband for divorce, fell ill, changed the beneficiary of her life insurance policy from her husband to her mother, and subsequently passed away before a hearing on her suit for divorce could be conducted. *Coleman*, 551 S.W.3d at 688. The husband sued his mother-in-law to recover the life insurance benefits. *Id.* The trial court awarded the insurance benefits to the couple's child, despite the wife's violation of the statutory injunction, pursuant to Tennessee Code Annotated § 36-4-106(d), prohibiting parties to a divorce from changing the beneficiary of any life insurance policy that names either party as beneficiary. *Id.* On appeal, this Court reversed and awarded the husband the life insurance benefits. *Id.* In so doing, this Court

adopted the Vermont Supreme Court's reasoning in *Aither v. Estate of Aither*, in which that court held that "the trial court could remedy the violation of an injunction following the abatement of a divorce action by considering the equities of the parties." *Id.* at 694 (citing *Aither*, 913 A.2d 376, 379 (Vt. 2006)). In so considering the equities, this Court concluded that the husband should have been awarded the life insurance benefits. *Coleman*, 551 S.W.3d at 694.

The issue presented to our Supreme Court in *Coleman* was whether the husband could recover the life insurance proceeds from the wife based on her violation of the statutory injunction even though the divorce case had abated with her death. *Id.* at 696. Our Supreme Court concluded that the divorce action had abated upon the wife's death and, as such, the statutory injunction had become ineffective. *Id.* Notwithstanding, our High Court also adopted the Vermont Supreme Court's flexible approach to the abatement rule, holding that although a divorce action abates with the death of a party, a trial court "should have the authority to consider the equities of the parties and remedy the violation of a statutory injunction." *Id.* at 697. As a consequence, our High Court agreed with this Court's adoption of Vermont's flexible approach to the abatement rule with respect to that particular set of facts, although it ultimately reversed this Court's finding that the equities favored the husband. *Id.*

Our High Court in *Coleman* limited this exception to the abatement rule to instances when a party to a divorce violates "a statutory injunction and later dies while the divorce action is pending." *Id.* Although the trial court in the instant cause entered an order enjoining either party from dissipating marital property, pursuant to Tennessee Code Annotated section 36-4-106(d), Husband had withdrawn the funds from joint accounts and sold joint stock prior to Conservator's filing of the petition for legal separation. Therefore, the funds at issue were not obtained by Husband in violation of a statutory injunction or temporary restraining order. Ergo, we conclude that *Coleman* has little application to the present case. Instead, we find the facts of *McMahon v. Butler*, 1986 WL 5894, at *2, more comparable to the present case.

In *McMahon*, the husband died before the trial court could enter an order dividing marital property although the court had already granted the couple a divorce. *McMahon*, 1986 WL 5894, at *1. Upon the husband's death, the wife requested that the trial court dismiss the action. *Id.* The trial court denied the wife's motion and entered an order "purporting to resolve all the property rights of the parties." *Id.* On appeal, this Court reversed the trial court's decision, concluding:

> The wife had not agreed to a division of the property; in fact the property rights of the parties were being litigated and the final decision on that aspect of the case had not been made. Under those circumstances we think the death of the husband terminated the action setting aside all preliminary orders and terminating the power of the trial court to make any further orders in the case.

Therefore, the orders of the trial court entered after the death of the husband are reversed and the cause is dismissed.

*Id.* at \*3 (emphasis added).

Similarly, in the case at bar, the trial court had not ruled on Conservator's petition for legal separation, Husband's counter-petition for divorce, or any aspect of division of marital property, which included the funds held by the clerk and master. Therefore, the death of Wife effected a termination of the actions for legal separation and divorce. All preliminary orders, including the court's orders requiring Husband to deposit funds with the clerk and master, should have been set aside rather than extended. Thus, we reverse the portion of the trial court's order retaining subject matter jurisdiction respecting the disposition of the funds and remand to the trial court so that it can release the funds held by the clerk and master back to Husband.[5]

Husband also contends that predicated upon our Supreme Court's ruling in *In re Estate of Fletcher*, 538 S.W.3d 444 (Tenn. 2017), the funds held by the clerk and master would constitute his sole property. *See Fletcher*, 538 S.W.3d at 454 ("[O]nce a husband or wife withdraws funds from a joint bank account held as tenants by the entirety, the funds cease to be held by the entirety."). Because we have now concluded that the trial court lacked subject matter jurisdiction over the disposition of the funds held in the registry of the court and that such funds should be returned to Husband, we need not address Husband's contention in this regard. *See McMahon*, 1986 WL 5894, at \*3 ("Our decision on this issue disposes of the appeal, making it unnecessary to take up the other issues raised by the appellant.").

## V. Conclusion

For the foregoing reasons, we reverse the portion of the judgment wherein the trial court retained subject matter jurisdiction over funds held by the clerk and master and withheld the funds from Husband. We remand this case for collection of costs below and release of the funds at issue to Husband. Costs on appeal are taxed to the appellee, Paula Harris as Conservator for Saundra Richey.

s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE

---

[5] We clarify that our decision does not impact the trial court's award of reasonable attorney's fees to Wife's attorney, Husband's attorney, and the guardian *ad litem*. *See New v. Dumitrache*, 604 S.W.3d 1, 20 (Tenn. 2020) ("Even when a case is dismissed for lack of subject matter jurisdiction, the court retains power to award attorney's fees and costs.").