IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 11, 2022 Session

## DAVID CUPPLES ET AL. V. JONATHAN ALAN HOLMES ET AL.

Appeal from the Chancery Court for Decatur County
No. 19-868          William B. Acree, Senior Judge

_____

No. W2021-00523-COA-R3-CV

_____

In this case involving a petition for grandparent visitation, where the minor child's parents had divorced and the mother had been admitted to an inpatient rehabilitation facility, the maternal grandparents asserted that the minor child's father had prevented them from visiting with the child once the father had obtained full custody of the child. The trial court conducted a hearing and subsequently granted to the grandparents monthly visitation with the child plus additional time during school breaks and holidays. The father has appealed. Discerning no reversible error, we affirm. We decline, however, to grant an award of attorney's fees to the grandparents on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Jonathan Alan Holmes, Ashland City, Tennessee, Pro Se.

William D. Bowen, Milan, Tennessee, for the appellees, David Cupples and Brigette Cupples.

## OPINION

### I. Factual and Procedural Background

This case originated with the filing of a petition for grandparent visitation, pursuant to Tennessee Code Annotated § 36-6-306, by David Cupples ("Grandfather") and Brigette Cupples ("Grandmother") (collectively, "Grandparents") on April 24, 2020, in the Decatur County Chancery Court ("trial court"), concerning their minor grandchild,

M.H. ("the Child"), who was approximately six years old by the time of trial. Grandparents named as respondents the Child's parents, Shayna Perez Holmes ("Mother") and Jonathan Alan Holmes ("Father") (collectively, "Parents"). Grandparents averred that as the maternal grandparents of the Child, they had enjoyed a significant relationship with the Child since her birth until that relationship was severely limited by Father following Parents' divorce and the subsequent restriction of Mother's visitation rights due to Mother's use of illegal drugs and her admission to an inpatient rehabilitation facility. Grandparents claimed that inasmuch as Father had been granted custody of the Child, they would have no ability to maintain their relationship with the Child unless they were granted specific visitation rights. Grandparents further averred that maintenance of their relationship with the Child was in the Child's best interest and that severe limitation of that relationship would cause substantial emotional harm to the Child.

Father filed a *pro se* answer to the petition on May 29, 2020, stating that the Child was residing with him following his filing of a dependency and neglect petition in the Decatur County Juvenile Court ("juvenile court") wherein he sought emergency custody due to Mother's drug use. Father claimed that the original juvenile court judge assigned to the dependency and neglect matter had to recuse himself from the case due to attempted contact by Grandfather. Father further stated that Grandmother was or had been employed by the Decatur County court system.

According to Father's answer, Mother had been arrested on "multiple drug charges and possession of a firearm in the commission" and was incarcerated in the Decatur County jail. Father also averred that methamphetamine had been found in Mother's apartment, which was located on the premises of Grandparents' residence. With respect to the proceedings, Father indicated that he was not opposed to Grandparents' supervised visitation with the Child although he admitted that Grandparents' visitation was reduced by him at the time the "Safer At Home Order" was put in place by Tennessee's governor.[1] Father therefore requested that Grandparents' petition be dismissed. On June 2, 2020, the Supreme Court assigned Senior Judge William B. Acree to adjudicate this matter.

Grandparents filed a motion for default judgment on June 26, 2020, asserting that their counsel had received no response to the petition from either Mother or Father. Although Grandparents acknowledged that Father had filed a response with the trial court without serving a copy on Grandparents' counsel, they postulated that such document did not comply with the requirements of Tennessee Rule of Civil Procedure 8.02. On July 14, 2020, the trial court entered an order granting a default judgment to Grandparents. The court found that Father had been properly served with process and that his response "failed to meet the requirements of Rule 8.02 and Rule 5 of the Tennessee Rules of Civil

---

[1] Governor Bill Lee issued Executive Order No. 22, also known as the "Safer At Home Order," on March 30, 2020, requiring persons in Tennessee to stay home when possible to avoid the spread of COVID-19.

Procedure." The court granted Grandparents' petition and awarded them visitation with the Child on the second weekend of each month and other specified dates.

On August 10, 2020, Father, through counsel, filed a motion pursuant to Tennessee Rule of Civil Procedure 60.02, seeking relief from the default judgment entered against him. Father claimed that he did not receive a copy of the motion for default judgment filed by Grandparents and was unaware of the motion hearing scheduled on July 14, 2020. Father also asserted that he had a meritorious defense to the petition in that he had not severely reduced Grandparents' visitation with the Child. Grandparents had sought to intervene in the dependency and neglect proceedings in juvenile court and had, in fact, been granted visitation by that court. Although Grandparents filed a response opposing relief from the default judgment, the trial court entered an order on February 23, 2021, setting aside the default judgment against Father. The court left in place, however, the temporary visitation schedule granted to Grandparents pending further hearing.

Meanwhile, on August 25, 2020, Father filed a second answer to the petition, denying that Grandparents were entitled to relief. Father responded that he did not oppose Grandparents' visitation with the Child and had not severely reduced same. Father claimed that Grandparents had only sought visitation on one occasion before filing their petition and that he had granted their request. Father further denied that there was any danger of harm to the Child.

On March 2, 2021, Grandparents filed a motion for summary judgment. In this motion, Grandparents asserted that because Father had failed to answer certain requests for admission propounded to him, the matters therein should be deemed admitted, such that there remained no genuine issues of material fact for determination. Grandparents further posited that they were entitled to judgment as a matter of law inasmuch as Father had admitted the necessary facts establishing grounds for an order granting grandparent visitation. Grandparents concomitantly filed a statement of undisputed material facts as well as a copy of the requests for admissions sent to Father and an affidavit from their counsel stating that he had mailed such requests to Father on May 6, 2020, and that Father had never responded.

Grandparents also filed an affidavit executed by Grandfather, stating that prior to the Child's placement into Father's custody, Grandfather had "nearly daily contact with [his] granddaughter for a period extending from approximately November 2017 through March 2020." Grandfather claimed that for four months after the Child was placed in Father's custody, he made consistent requests for visitation but was granted only a single, one-hour, supervised visit with the Child. Grandfather related that although the Child seemed guarded and withdrawn during this supervised visit, after the juvenile court ordered regular visits for Grandparents, the Child's personality returned to "normal" in

the sense that she was happy and excited to see Grandparents. Grandmother filed a nearly identical affidavit.

Grandparents also filed a copy of the juvenile court's September 25, 2020 order entered in the dependency and neglect proceeding, which provided that the Child would remain in Father's custody and that Mother would receive bi-monthly visitation with the Child while Mother was in a rehabilitation facility. This visitation was to be facilitated by Grandparents' picking up the Child on Mother's weekends and transporting the Child to see Mother on Friday evenings and Sunday afternoons. Grandparents would then enjoy the remainder of the time during those weekends with the Child. The order further reflected that Grandparents had withdrawn their motion to intervene in the dependency and neglect proceeding. Subsequently, on April 12, 2021, Father filed a *pro se* response to Grandparents' motion for summary judgment wherein Father also purported to answer the previously propounded requests for admissions.

The trial court conducted a hearing on the pending petition and motions on April 14, 2021, wherein the court considered testimony from Grandparents, Mother, Father, and Father's paramour. The trial court subsequently entered an order on April 29, 2021, denying summary judgment to Grandparents while granting Grandparents' petition for visitation with the Child based on the evidence presented at trial. Although the trial court did deem the requests for admissions admitted due to Father's failure to timely respond, the court stated that its attached findings of fact and conclusions of law were predicated solely upon the proof presented at trial.

The trial court's attached findings and conclusions demonstrate that the court considered the evidence presented at trial in light of the requirements of the grandparent visitation statute and the applicable best interest factors, determining that Grandparents should be granted visitation with the Child. The court thus ordered that Grandparents would enjoy monthly visitation with the Child plus additional time during school breaks and holidays. The court specified that the monthly visitation granted to Grandparents was to coincide with the visitation granted to Mother by the juvenile court. Father timely appealed.

On September 23, 2021, Grandparents filed a motion in this Court seeking to dismiss Father's appeal due to deficiencies in Father's appellate brief. This Court subsequently denied the motion to dismiss "without prejudice to [Grandparents'] ability to raise this issue in their responsive brief." Grandparents were also granted additional time to file their responsive brief. Upon Father's motion, on September 30, 2021, this Court entered an order affording Father ten days to file an amended brief complying with the rules of this Court. On October 8, 2021, Grandparents filed a motion asking this Court to consider certain post-judgment facts, which this Court subsequently denied.

## II. Issues Presented

Father presents the following issues for our review, which we have restated and condensed slightly:

1. Whether the trial court erred by granting visitation to Grandparents when Grandparents failed to present sufficient evidence to meet the requirements of Tennessee Code Annotated § 36-6-306 concerning the length of time the Child resided with Grandparents, whether Grandparents were full-time caretakers of the child, whether Grandparents maintained a significant relationship with the Child, whether that relationship was severed by Father, and whether severance of the relationship would cause harm to the Child.

2. Whether the trial court erred in the amount of visitation granted to Grandparents.

3. Whether the trial court erred in failing to provide for special circumstances affecting the visitation schedule.

4. Whether the trial court erred by failing to make findings regarding whether the visitation granted to Grandparents would interfere with the parent-child relationship.

5. Whether the trial court erred by granting visitation to Grandparents when Grandparents failed to present sufficient evidence that Father had denied them the opportunity to visit with the Child before filing their petition.

6. Whether the trial court erred by granting visitation to Grandparents when Grandparents failed to present sufficient evidence that Father had opposed or severely reduced their visitation with the Child.

Grandparents present the following additional issues for review:

7. Whether Father's appeal should be dismissed due to his failure to submit a brief that comports with the requirements of the Tennessee Rules of Appellate Procedure.

8. Whether Grandparents should be awarded their attorney's fees and costs incurred as a result of Father's appeal.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *In re Estate of Fletcher*, 538 S.W.3d 444, 448 (Tenn. 2017) ("This matter was heard without a jury; therefore, our standard of review is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual determinations unless the evidence preponderates otherwise."). However, our review of the court's legal conclusions is *de novo* with no presumption of correctness. *Estate of Fletcher*, 538 S.W.3d at 448; *see Blankenship v. Blankenship*, 59 S.W.3d 115, 117 (Tenn. Ct. App. 2001).

As this Court has recently explained concerning review of a trial court's order allowing grandparent visitation:

> Recent Tennessee caselaw provides that the standard of review for an appellate court reviewing a trial court's visitation order, including one for grandparent visitation, is governed by the abuse of discretion standard, with the best interest of the children's welfare given "paramount consideration." *See Huls v. Alford*, No. M2008-00408-COA-R3-CV, 2008 WL 4682219 (Tenn. Ct. App. Oct. 22, 2008) (citing *Smallwood v. Mann*, 205 S.W.3d 358, 361 (Tenn. 2006)); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Johnson v. Richardson*, 337 S.W.3d 816, 819 (Tenn. Ct. App. 2010) (citing *Eldridge*, 42 S.W.3d at 85). We will not overturn the trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge*, 42 S.W.3d at 85. Thus, the appellate court should "review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Tomlin v. Baxter*, No. M2014-01746-COA-R3-CV, 2015 WL 7749064, at *3 (Tenn. Ct. App. Nov. 30, 2015) (citing *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010) (citations omitted)).

*In re Dayton R.*, No. W2015-01848-COA-R3-JV, 2016 WL 1403255, at *5 (Tenn. Ct. App. Apr. 7, 2016).

We respect Father's decision to proceed without benefit of counsel and note that pleadings "prepared by pro se litigants untrained in the law should be measured by less

stringent standards than those applied to pleadings prepared by lawyers." *Stewart v. Schofield*, 368 S.W.3d 457, 462 (Tenn. 2012) (citing *Carter v. Bell*, 279 S.W.3d 560 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Although parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## IV. Adequacy of Father's Appellate Brief

As a threshold matter, Grandparents assert that Father's appeal should be dismissed due to his failure to submit a brief that comports with the requirements of the Tennessee Rules of Appellate Procedure. Grandparents contend that Father's brief is inadequate in several ways, including, *inter alia*: (1) Father's brief fails to advance more than a "skeletal" argument, (2) Father's brief fails to set forth the applicable standard(s) of review, (3) Father's arguments do not correlate to the issues raised, and (4) Father's issues contained in the statement of issues are difficult to understand.

Tennessee Rule of Appellate Procedure 27 requires that the appellant's brief contain the following in pertinent part:

(1)    A table of contents, with references to the pages in the brief;

(2)    A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

\* \* \*

(4)    A statement of the issues presented for review;

(5)    A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6)    A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7)    An argument, which may be preceded by a summary of argument, setting forth:

        (A)    the contentions of the appellant with respect to the issues presented, and the reasons therefor, including

the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

Although we recognize that Father is a *pro se* litigant and respect his decision to proceed self-represented, Father's appellate brief does contain certain deficiencies with regard to the above-listed requirements. As Grandparents point out, Father's issues listed in his statement of issues are difficult to precisely discern, and his arguments and issues do not completely correlate. However, we do not consider his argument to be merely "skeletal."

Upon review, we do not find Father's brief so deficient as to warrant dismissal of his appeal. We also recognize, however, that this Court has previously instructed that an issue may be deemed waived "where it is simply raised without any argument regarding its merits." *See Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000); *see also Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (explaining that the failure of a party to cite to authority or to construct an argument regarding his or her position on appeal constitutes waiver of that issue). As this Court has acknowledged, it is "under no duty to verify unsupported allegations in a party's brief, or for that matter consider issues raised but not argued in the brief." *Bean*, 40 S.W.3d at 56. We will, therefore, only address those issues for which Father has made an adequate supportive argument.

## V. Evidence Satisfying Tennessee Code Annotated § 36-6-306

Father posits that the trial court erred by granting visitation to Grandparents when Grandparents failed to present sufficient evidence meeting the requirements of Tennessee Code Annotated § 36-6-306 concerning, *inter alia*, the length of time the Child resided with Grandparents, whether Grandparents were full-time caretakers of the Child, whether Grandparents maintained a significant relationship with the Child, whether that relationship was severed by Father, and whether severance of the relationship would cause harm to the Child. Father further argues that Grandparents failed to demonstrate that he had denied them the opportunity to visit with the Child or had severely reduced their visitation prior to the petition's filing. Grandparents counter that sufficient evidence

satisfying the statutory requirements was presented.  Upon our thorough review, we agree with Grandparents.

Tennessee Code Annotated § 36-6-306 (2021) provides in pertinent part:

(a)     Any of the following circumstances, when presented in a petition for grandparent visitation to the circuit, chancery, general sessions courts with domestic relations jurisdiction, other courts with domestic relations jurisdiction or juvenile court in matters involving children born out of wedlock of the county in which the petitioned child currently resides, necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents or custodian or if the grandparent visitation has been severely reduced by the custodial parent or parents or custodian:

* * *

(2)     The child's father or mother are divorced, legally separated, or were never married to each other;

* * *

(5)     The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent, parents, or custodian (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child); or

(6)     The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance or severe reduction of the relationship, this relationship was severed or severely reduced by the parent, parents, or custodian for reasons other than abuse or presence of a danger of substantial harm to the child, and severance or severe reduction of this relationship is likely to occasion substantial emotional harm to the child.

(b)(1) In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child.  Such finding of substantial harm may be based upon cessation or severe reduction of the relationship between an unmarried minor

child and the child's grandparent if the court determines, upon proper proof, that:

(A)     The child had such a significant existing relationship with the grandparent that loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child;

(B)     The grandparent functioned as a primary caregiver such that cessation or severe reduction of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or

(C)     The child had a significant existing relationship with the grandparent and loss or severe reduction of the relationship presents the danger of other direct and substantial harm to the child.

(2)     For purposes of this section, a grandparent shall be deemed to have a significant existing relationship with a grandchild if:

(A)     The child resided with the grandparent for at least six (6) consecutive months;

(B)     The grandparent was a full-time caretaker of the child for a period of not less than six (6) consecutive months; or

(C)     The grandparent had frequent visitation with the child who is the subject of the suit for a period of not less than one (1) year.

(3)     A grandparent is not required to present the testimony or affidavit of an expert witness in order to establish a significant existing relationship with a grandchild or that the loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child. Instead, the court shall consider whether the facts of the particular case would lead a reasonable person to believe that there is a significant existing relationship between the grandparent and grandchild or that the loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child.

* * *

- 10 -

(c)     Upon an initial finding of danger of substantial harm to the child, the court shall then determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307. Upon such determination, reasonable visitation may be ordered.

## A. Danger of Substantial Harm

In analyzing the trial court's decision concerning grandparent visitation, we first determine whether Grandparents presented sufficient evidence of the presence of a danger of substantial harm to the Child. *See* Tenn. Code Ann. § 36-6-306(b)(1). As this Court has previously elucidated:

> Before we consider the substantive issue raised in this appeal, we briefly review the law on grandparent visitation in Tennessee. As explained in this Court's opinion in *Green v. Evans*, No. M2011-00276-COA-R3-CV, 2012 WL 1107887 (Tenn. Ct. App. March 30, 2012):
>
> > The decisions of the U.S. Supreme Court and the Tennessee Supreme Court, interpreting the federal and state constitutions, explicitly prohibit any judicial assumption that grandparent/grandchild relationships always benefit the child, as contrary to the parents' fundamental right to raise their children as they see fit. *See Troxel v. Granville*, 530 U.S. 57, 66-72, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (recognizing parents' fundamental constitutional right to make decisions on care, custody and control of children, finding trial court erred in presuming grandparent visits are in best interest of children); *Hawk v. Hawk*, 855 S.W.2d 573, 577-82 (Tenn. 1993) (recognizing parents' fundamental constitutional right, finding trial court engaged in "sentimental" commentary on grandparents and erred in "unquestioning judicial assumption" that grandparent-grandchild relationship always benefits child, basing award of grandparent visitation on that presumed benefit). To avoid such an assumption, the Tennessee constitution and Tennessee's grandparent visitation statute require a grandparent seeking visitation to prove, as a threshold requirement, that the child will be in danger of substantial harm if visitation is not ordered by the court. *Hawk*, 855 S.W.2d at 581; Tenn. Code Ann. § 36-6-306(b)(1). . . . Under *Troxel*, pursuant to the federal constitution, in all phases of a proceeding on grandparent visitation, there is a presumption that a fit parent is acting in the child's best interest, and the court must accord special

- 11 -

weight to the parent's determinations. *Troxel*, 530 U.S. at 68, 70 [120 S. Ct. 2054] (plurality opinion) ("there is a presumption that fit parents act in the best interests of their children."). . . .

*Green*, 2012 WL 1107887, at *8.

Thus, the "substantial harm" component is the threshold question in grandparent visitation cases. As explained in *Hawk*:

> The requirement of harm is the sole protection that parents have against pervasive state interference in the parenting process. As one author has stated:
>
>> For the state to delegate to the parents the authority to raise the child as the parents see fit, except when the state thinks another choice would be better, is to give the parents no authority at all. 'You may do whatever you choose, so long as it is what I would choose also' does not constitute a delegation of authority.
>
> Bean, *Grandparent Visitation: Can the Parent Refuse?*, 24 U. Louisville J. Fam. L. 393, 441 (1985-6) [hereinafter Bean, *Grandparent Visitation* ]. . . .
>
> * * *
>
> We, too, agree that neither the legislature nor a court may properly intervene in parenting decisions absent significant harm to the child from those decisions. . . . An approach requiring a court to make an initial finding of harm to the child before evaluating the "best interests of the child" works equally well in this case to prevent judicial second-guessing of parental decisions. As one scholar has written:
>
>> If the courts attempt to resolve these disputes when the only thing at stake is a grandparent's argument that visitation is a 'better' decision for the child, the placement of the child with the parent becomes subject to the court's

> supervision and judgment of what are the best decisions for that child.

See Bean, *Grandparent Visitation*, *supra*, at 444-5.

> By applying this type of analysis, we also seek to avoid the "unquestioning judicial assumption" that grandparent-grandchild relationships always benefit children, an assumption that overlooks the necessity of a threshold finding of harm before the state can intervene in the parent-child relationship.

> * * *

> We hold that Article I, Section 8 of the Tennessee Constitution protects the privacy interest of these parents in their child-rearing decisions, so long as their decisions do not substantially endanger the welfare of their children. Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right.

*Hawk*, 855 S.W.2d at 580-82 (footnote omitted).

Since the decision in *Hawk*, the Tennessee Grandparent Visitation Statute has been amended to require proof of "the presence of a danger of substantial harm" as a threshold requirement in most cases. *See* 2000 Tenn. Laws Pub. Ch. 891 (H.B. 2297) (2000) (amending the Grandparent Visitation Statute to include a substantial harm component). As succinctly discussed in Marlene Eskind Moses and Jessica J. Uitto, *The Current Status of Tennessee's Grandparent Visitation Law*, Tenn. B. J., Jan. 2010, at 46, 24:

> Because of the great deference that courts give to parental decisions, when the court addresses grandparent visitation rights, it must perform a lengthy and complex three-pronged analysis. First, the grandparent seeking the court's intervention must show that one of six situations exists pursuant to Tenn. Code Ann. § 36-6-306(a). Second, the court must determine whether there is a danger of substantial harm to the child if the child does not have visitation with the grandparent. The foregoing is based on three factors set out in Tenn. Code Ann. § 36-6-306(b)(1). In conjunction with

- 13 -

this analysis, the court must also determine if the relationship between the child and grandparent is significant based on three more factors set out in Tenn. Code Ann. § 36-6-306(b)(2). Third, if the court finds that there is danger of substantial harm if the child does not have visitation with the grandparent, it must decide whether the visitation would be in the child's best interest based on seven factors under Tenn. Code Ann. § 36-6-307.

*Id*. (footnotes omitted).

*McGarity v. Jerrolds*, 429 S.W.3d 562, 570-72 (Tenn. Ct. App. 2013) (footnote omitted).

In the instant cause, the trial court made extensive findings and conclusions, too lengthy to be recounted verbatim herein. As pertinent to this issue, the trial court found that the Child would likely experience severe emotional harm if she were unable to visit with Grandparents, based on, *inter alia*, the following circumstances: (1) the Child had enjoyed a close and significant relationship with Grandparents before the cessation of visitation; (2) Grandparents had spent time with the Child almost daily for approximately two years and had, at times, been the Child's only caregivers; (3) the Child was six years of age and was therefore unlikely to understand why she could no longer see Grandparents; and (4) Grandparents and the Child enjoyed a strong emotional bond. The evidence presented at trial supports these findings.

Grandmother testified that she was present at the Child's birth despite the fact that Mother and Father were living in Washington at the time. Grandmother stated that following the parents' divorce, the Child came to stay with her and Grandfather in Tennessee in December 2017 while Mother remained in Washington and "transitioned out" of the military. Grandparents were the Child's only caretakers from December 2017 until April 2018, at which time Mother moved in with Grandparents as well. According to Grandmother, after Mother began to reside in the home, Grandparents continued to participate in caregiving for the Child on a daily basis unless Father was exercising his co-parenting time, which initially occurred on alternating weekends and later occurred on alternating weeks. Grandmother explained that the change to fifty/fifty co-parenting occurred around October 2018 following Father's filing of a dependency and neglect action regarding Mother's substance abuse.[2]

Grandmother further related that Mother and the Child remained in Grandparents' home until November 2019 when Grandparents purchased a new home with a separate apartment on the premises. Although Mother and the Child then moved into the

---

[2] We note that the Davidson County Juvenile Court's order awarding joint custody with alternating weeks of co-parenting time for each parent was entered in March 2019.

apartment, Grandparents still saw the Child on a daily basis unless the Child was visiting with Father. According to Grandmother, the Child often spent the night at their home because Mother was enrolled in classes and could not be home with the Child in the evening.

Grandmother acknowledged that Mother had a history of substance abuse. In March 2020, Grandmother discovered what appeared to be illicit drugs among Mother's possessions in the apartment. When Mother was confronted, she confessed that she had been using methamphetamine. According to Grandmother, she and Grandfather contacted Father's mother and reported Mother's drug use. Father then filed another dependency and neglect action in juvenile court, resulting in the juvenile court's award of custody to Father on March 24, 2020.

Grandmother claimed that since Father obtained custody, Grandfather and she had attempted to contact Father to speak or visit with the Child but that Father had either been unresponsive or had denied their requests. Grandmother added that they had been allowed to speak to the Child one time via telephone on her birthday in April 2020 and had been permitted only one short, in-person, supervised visit in June 2020. Grandmother presented various text messages she had exchanged with Father in March and April 2020 as an exhibit, evincing that Father had instructed Grandmother to cease contacting him on April 15, 2020, prior to the filing of Grandparents' petition for visitation.

Grandmother also reported that the juvenile court had allowed Grandparents to transport the Child for visits with Mother beginning in July 2020, such that they were able to spend time with the Child one weekend per month, plus some additional days during the year. Notwithstanding, Father had placed additional restrictions on their ability to see the Child that were not contained in the juvenile court's order. Grandparents had complied with Father's demands in order to continue visits.

According to Grandmother, the Child appeared to be much more reserved in her interactions with Grandparents during the visit in June 2020, which occurred after she had not seen them for a few months. However, Grandmother related that the Child had seemed much "better" and had returned to her normal, outgoing personality since their visits had become more regular. Grandmother also stated that the Child at times became upset and teary when she had to leave Grandparents and return to Father. Because of this, Grandparents had initiated a custom with the Child of counting how many nights or "sleeps" would pass until their next visit.

Grandmother articulated that she enjoyed a close relationship with the Child and loved the Child very much. According to Grandmother, the Child frequently had attended church with Grandparents in the past and had vacationed with them every year since her birth. Grandmother urged that the Child appeared to enjoy visiting with

Grandparents and opined that the Child would suffer substantial emotional harm if the visits were stopped or reduced. Grandmother also stated that all of the Child's extended family lived in Decatur County and that she did not want the Child to lose touch with her family.

Grandmother testified that she had encouraged the Child to have a good relationship with both Mother and Father and that Grandmother did not desire to take parenting time away from Father. Therefore, Grandparents proposed a visitation schedule that coincided with Mother's co-parenting time. Grandmother reported that Mother was residing in an inpatient rehabilitation facility at the time of trial and that Grandparents transported the Child to the facility to see Mother in accordance with the juvenile court's order. Grandmother stated that she did not believe that Father would allow them to visit the Child regularly absent a court-ordered schedule.

During cross-examination, Grandmother acknowledged that Grandparents had filed a motion to intervene in the juvenile court action on or around April 13, 2020, reflecting that they wished to pursue custody of the Child; however, they had not been allowed to intervene in that matter. Grandmother also acknowledged that the petition for grandparent visitation had been filed approximately thirty days after Father was granted custody. Although Grandmother conceded that she had not asked to see the Child initially because of the "safer at home" order, she explained that she was later thwarted by Father's April 15, 2020 request for no contact. Grandmother expressed her concerns that should Mother relapse, Grandparents would not be allowed visitation with the Child absent an order from the trial court.

Grandfather also testified, indicating that his testimony would match Grandmother's for the most part. Grandfather related his love for the Child and referenced the significant bond that Grandparents shared with her. Grandfather also reported that he and Grandmother had both asked for contact and visits with the Child but that Father had not allowed significant contact before the juvenile court's order, with only one telephone call and one supervised visit having been granted. Grandfather indicated that he had previously taken the Child to church, the doctor, or wherever she needed to go before Father obtained custody. Grandfather also reported that the Child's personality had proved more "normal" since their visits with her had become consistent. According to Grandfather, the Child was quiet and reserved when they were allowed to see her in June 2020, but she had seemed happier since they had enjoyed regular visits.

Mother testified in support of Grandparents' visitation petition, stating that Grandparents had accurately described their relationship with the Child and the timeline preceding trial. Mother recounted that she and Father divorced in December 2017 and that the Child came to reside with Grandparents in January 2018. Mother further reported that the Child enjoyed a strong relationship with Grandparents due to their significant contact during the life of the Child, who frequently asked when she would get

- 16 -

to see them again. According to Mother, based upon her familiarity with Father, she believed that it was unlikely that he would allow Grandparents to enjoy regular visits with the Child absent a court order.

Mother likewise opined that cessation or reduction of Grandparents' visits with the Child would be detrimental to the Child. Mother testified that she did not see the Child from March 2020 to August 2020 and that the Child, who had previously been outgoing and playful, was much more reserved during their visit in August 2020. However, since she and Grandparents had been having regular visits with the Child, the Child had reverted to her "old personality" and had gotten her "spunk back." Mother acknowledged that Grandparents' proposed visitation schedule would coincide with her co-parenting time while indicating her agreement to that proposal.

Father's paramour, M.G., testified that she had been living with Father and had seen the Child regularly since 2018. M.G. explained that although the Child performed well in school, she at times received negative behavior reports after spending a weekend with Grandparents. M.G. stated that the Child returned from visits "sugared up" and smelling of cigarette smoke despite the fact that Father had requested Grandparents not to provide the Child excessive sugar or engage in smoking around her. M.G. opined that Father was a good parent.

Upon taking the stand, Father testified that although he did not object to Grandparents' visitation with the Child, he did oppose a court order granting such visitation. Father noted that the Child had lived primarily with Grandparents from January 2018 to April 2018 and spent more time with them than she did with Father during that period. Father also acknowledged that Grandparents adequately provided for the Child.

Father reported that after Mother moved to Tennessee in April 2018, he had more equal time with the Child but that Grandparents saw the Child as much as he did. Although Father claimed that he had not allowed Grandparents to visit the Child from March to June 2020 because of concerns regarding COVID-19, he admitted that he had the Child in day care during that time period. Father also related that he cut off contact in April 2020 because Mother was still living in the apartment on Grandparents' property until she was arrested in May 2020.

Our review of the evidence presented leads to the conclusion that the trial court's findings were supported by a preponderance of the evidence. Grandparents clearly maintained a significant relationship with the Child, as defined in the statute, because the Child resided in Grandparents' home (with and without Mother) for more than six consecutive months. *See* Tenn. Code Ann. § 36-6-306(b)(2)(A). Grandparents enjoyed daily and then frequent contact with the Child from December 2017 or January 2018 until March 2020, even after Mother and the Child moved into an apartment on Grandparents'

- 17 -

property. *See* Tenn. Code Ann. § 36-6-306(b)(2)(C). In addition, Grandparents presented substantial evidence concerning their close relationship with the Child, which "would lead a reasonable person to believe that there is a significant existing relationship between the grandparent and grandchild or that the loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child." *See* Tenn. Code Ann. § 36-6-306(b)(3).

As this Court has previously explained concerning substantial harm:

> Although the circumstances that constitute substantial harm cannot be precisely defined, this court has offered the following guidelines:
>
> > [T]he use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.
>
> *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001) (footnotes omitted). Moreover, "[t]o find substantial harm, there must be supporting evidence in the record that is specific to this child's relationship with this grandparent." *Green v. Evans*, No. M2001-00276-COA-R3-CV, 2012 WL 1107887, at *11 (Tenn. Ct. App. Mar. 30, 2012); *see Angel v. Nixon*, No. M2010-00554-COA-R3-CV, 2010 WL 4483915, at *3 (Tenn. Ct. App. Nov. 8, 2010). For an appellate court to affirm a trial court's finding of substantial harm, "there must be affirmative evidence in the record showing that the specific child at issue is likely to suffer substantial harm from the loss of the grandparent-grandchild relationship." *McGarity*, 429 S.W.3d at 577.

*In re Camryne B.*, No. M2014-00801-COA-R3-JV, 2014 WL 7181345, at *5 (Tenn. Ct. App. Dec. 16, 2014) (other internal citations omitted).

In the case at bar, the trial court determined that Grandparents had met their burden of proof concerning a danger of substantial harm to the Child as required by the statute, which demands a finding that the "child had such a significant existing relationship with the grandparent that loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child." *See* Tenn. Code Ann. § 36-6-306(b)(1)(A). Upon careful review, we agree that Grandparents have met this burden. The Child had enjoyed a significant relationship with Grandparents at least since January 2018 with Grandparents acting as her sole caretakers for a period of three to four months. On this point, Grandparents elaborated that they had taken the Child to church, the

doctor, and on vacation, as well as having cared for her day-to-day needs during times when the Child was not with Father.

Grandparents and Mother also observed that the Child's personality had seemed reserved and different during their initial visits after Father obtained custody but that the Child had returned to a happier disposition once regular visitation was established. Mother related that the Child often discussed when she would next be able to see Grandparents. Grandparents described having to count "sleeps" with the Child so that she could know how soon she would be able to see them again. We conclude that the trial court properly determined that there was a danger of substantial emotional harm to the Child if visitation with Grandparents was denied. We will therefore proceed to analyze whether Grandparents met their burden of proof concerning the remainder of the statutory requirements.

### B. Proof Required by Tennessee Code Annotated § 36-6-306(a)

Father argues that the trial court erred by finding that Grandparents met their burden of proof concerning the circumstances required by Tennessee Code Annotated § 36-6-306(a). This portion of the statute requires a showing that grandparent visitation was "opposed by the custodial parent" or was "severely reduced by the custodial parent." *See* Tenn. Code Ann. § 36-6-306(a). It additionally requires a showing of "any" of the enumerated circumstances contained therein, including that the Child's parents had been divorced or that

> [t]he "child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance of the relationship, this relationship was severed by the parent or parents for reasons other than abuse or presence of a danger of substantial harm to the child, and severance of this relationship is likely to occasion substantial emotional harm to the child."

Tenn. Code Ann. § 36-6-306(a)(2) and (6).

The trial court found that Father had "terminated the visitation in March of 2020 [when] the child had been with the grandparents for well over two years on a substantial basis." We agree. We have previously determined that Grandparents had enjoyed daily and then frequent contact with the Child from December 2017 or January 2018 until March 2020. Although Father claimed that he was not opposed to Grandparents' visiting the Child, he refused to allow visits from March to June 2020, proffering concerns respecting the pandemic and apprehension that the Child would be allowed to be around Mother before her arrest. However, Father failed to explain why he allowed the Child to visit his mother and attend day care during that same time period without similar concerns regarding illness or why Grandparents could not have been allowed visitation

- 19 -

somewhere other than their home while Mother allegedly was still residing on Grandparents' property. In addition, Father not only refused in-person contact between Grandparents and the Child, he disallowed all telephone contact except for one call on the Child's birthday.

Despite his protestations to the contrary, the exhibits presented at trial demonstrate that Father sent a text message to Grandparents in April 2020 asking them to cease having contact with him. This predated the filing of Grandparents' petition for visitation. In doing so, Father denied visitation to Grandparents by refusing to allow them further contact such that they could not request visits. In addition, although Father points to the single visit in June 2020 as evidence of his lack of opposition to visitation, we note that Father placed significant restrictions on that visit by limiting Grandparents' time with the Child to one hour and requiring that the visit be supervised by him. This amounts to a constructive denial of visitation. *See Coleman v. Olson*, 551 S.W.3d 686, 699 (Tenn. 2018) ("Constructive denial occurs when the custodial parent limits or restricts the frequency or conditions of visitation so that it is the same as a denial of visitation."). Grandparents have clearly established that Father opposed and severely reduced their visitation with the Child after he obtained custody in March 2020.

Furthermore, Grandparents sufficiently established that circumstances matching two of the enumerated examples delineated in Tennessee Code Annotated § 36-6-306(a) existed, necessitating a hearing concerning grandparent visitation. It is undisputed that Father and Mother were divorced in Washington in December 2017 before they separately returned to Tennessee. *See* Tenn. Code Ann. § 36-6-306(a)(2). In addition, Grandparents maintained a significant relationship with the Child for at least two years prior to Father's obtaining custody and halting Grandparents' visits with the Child. Father has neither alleged nor proven that his cessation of Grandparents' visits was due to any abuse of the Child by Grandparents or presence of a danger of substantial harm to the Child occasioned by Grandparents. Furthermore, as we have previously determined, Father's cessation of Grandparents' visits with the Child is likely to cause substantial emotional harm to the child. *See* Tenn. Code Ann. § 36-6-306(a)(6). As such, Grandparents have successfully proven that the circumstances listed in Tennessee Code Annotated § 36-6-306(a)(2) and (6) were present.

### VI. Evidence Concerning Best Interest Factors Contained in Tennessee Code Annotated § 36-6-307

When the other statutory requirements have been met, Tennessee Code Annotated § 36-6-306 instructs that the court should "determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307." Tennessee Code Annotated § 36-6-307 (2021) provides:

In determining the best interests of the child under § 36-6-306, the court shall consider all pertinent matters, including, but not necessarily limited to, the following:

(1)     The length and quality of the prior relationship between the child and the grandparent and the role performed by the grandparent;

(2)     The existing emotional ties of the child to the grandparent;

(3)     The preference of the child if the child is determined to be of sufficient maturity to express a preference;

(4)     The effect of hostility between the grandparent and the parent of the child manifested before the child, and the willingness of the grandparent, except in case of abuse, to encourage a close relationship between the child and the parent or parents, or guardian or guardians of the child;

(5)     The good faith of the grandparent in filing the petition;

(6)     If the parents are divorced or separated, the time-sharing arrangement that exists between the parents with respect to the child;

(7)     If one (1) parent is deceased or missing, the fact that the grandparents requesting visitation are the parents of the deceased or missing person;

(8)     Any unreasonable deprivation of the grandparent's opportunity to visit with the child by the child's parents or guardian, including denying visitation of the minor child to the grandparent for a period exceeding ninety (90) days;

(9)     Whether the grandparent is seeking to maintain a significant existing relationship with the child;

(10)    Whether awarding grandparent visitation would interfere with the parent-child relationship; and

(11)    Any court finding that the child's parent or guardian is unfit.

Father contends that the trial court erred by failing to make findings regarding whether the visitation granted to Grandparents would interfere with the parent-child relationship. *See* Tenn. Code Ann. § 36-6-307(10). Father also advances that the trial

court erred by determining that an "unreasonable deprivation of [Grandparents'] opportunity to visit" occurred. *See* Tenn. Code Ann. § 36-6-307(8). Following our thorough review of the record, however, we determine that the trial court properly considered the applicable best interest factors in this matter and made sufficient findings with reference to each that are supported by a preponderance of the evidence.

Specifically with regard to factor ten, which is one of only two issues raised by Father concerning the best interest factors, the trial court expressly determined that the grandparent visitation ordered would not interfere with Father's relationship with the Child. The trial court subsequently explained that inasmuch as Grandparents' visitation time would completely coincide with Mother's co-parenting time with the Child, Father's co-parenting time would not be impacted. We agree with the trial court that the visitation granted to Grandparents should have no impact on Father's co-parenting time.

In addition, we note that no evidence was presented suggesting that Grandparents have done anything to interfere with the Child's relationship with Father. In fact, Grandparents each testified that they had both encouraged the Child to have a good relationship with Father and with Mother. Given the evidence presented at trial, Father made no showing that by allowing Grandparents' visitation to occur, Father's relationship with the Child would be negatively impacted.

Father also asserts that Grandparents failed to prove an unreasonable deprivation of their opportunity to visit with the Child by Father, as outlined in factor number eight above. The evidence presented at trial, however, clearly demonstrated that Father allowed Grandparents only one short, supervised visit with the Child during the more than ninety-day period between the juvenile court's grant of custody to Father on March 24, 2020, and its subsequent July 10, 2020 order permitting Grandparents to transport the Child for Mother's co-parenting time. Moreover, during that same timeframe, Father only allowed one telephone call between Grandparents and the Child.

Although Father attempts to present arguments concerning other best interest factors in his brief, he has raised no other issues in his statement of issues on appeal concerning such factors. Accordingly, Father's arguments concerning the remaining best interest factors are waived. *See Gibson v. Bikas*, 556 S.W.3d 796, 810 (Tenn. Ct. App. 2018) (explaining that a party's request for attorney's fees on appeal would not be considered because it had not been raised as an issue in the statement of the issues); *Ethridge v. Estate of Ethridge*, 427 S.W.3d 389, 395 (Tenn. Ct. App. 2013) ("Issues not raised in the statement of the issues may be considered waived."). We conclude, however, that our thorough review of the trial court's findings concerning the applicable best interest factors establishes that those findings were supported by a preponderance of evidence.[3]

---

[3] We consider factor number three to be inapplicable in this matter inasmuch as the Child expressed no

## VII. Father's Remaining Issues

We similarly determine Father's remaining issues to be waived insofar as he neglected to offer support of those issues in the argument section of his brief, failing to state "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on[.]" Tenn. R. App. P. 27(a)(7)(A). *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("[W]hen a party raises an issue in its brief, but fails to address it in the argument section of the brief, we consider the issue to be waived."). We will, therefore, proceed to address the final issue raised by Grandparents.

## VIII. Attorney's Fees on Appeal

Grandparents assert that they should be awarded their attorney's fees and costs incurred as a result of Father's appeal, which they characterize as frivolous. As this Court has previously explained regarding frivolous appeals:

> Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. Determining whether to award these damages is a discretionary decision.
>
> A frivolous appeal is one that is devoid of merit or one that has no reasonable chance of succeeding.

*Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003) (internal citations omitted).

> Similarly, Tennessee Code Annotated § 27-1-122 (2017) provides:
>
> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

---

preference to the trial court and was likely of insufficient maturity to do so.

We determine that Father's appeal was not so completely devoid of merit as to be deemed frivolous. Therefore, we exercise our discretion to deny Grandparents' request for attorney's fees on appeal.

## IX. Conclusion

For the foregoing reasons, we affirm the trial court's order awarding visitation to Grandparents. We decline, however, to award attorney's fees to Grandparents on appeal. Costs on appeal are taxed to the appellant, Jonathan Alan Holmes. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed below.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE